FRED WOODS, Appellant, v. JOHN E. WILSON et al., Appellees.

**BROKERS:** Authority—Authority to Sell.  Written authority "to sell" on certain specified terms, and not merely to find a purchaser, carries authority, *within the authorized limits,* to do all things necessary to make a binding enforceable contract—for instance (a) to receive the authorized cash payment, or (b) to enter into a contract under the terms authorized.

SPECIFIC PERFORMANCE: Contracts Enforceable—Unauthorized Contract by Broker. A contract for the sale of land, by and in the name of brokers, *but in excess of their authority*, is non-enforceable.

PRINCIPLE APPLIED: Brokers were authorized to sell on the following terms: $500 cash; $1,500 on March 1, 1914; balance in 10 years, at 5 per cent.

The brokers entered into a written contract as follows: Cash, $500; $1,500, or more, March 1, 1915; option to pay $100 or any multiple thereof on any interest day; grantor to furnish an abstract showing good and sufficient title clear of all liens and incumbrances.

*Held*, non-enforceable by grantee.

BROKERS: Authority—Agreement to Furnish Abstract. Naked authority "to sell" land carries no implied authority to bind the owner to furnish an abstract of title.

BROKERS: Authority—Extent of Authority—Duty to Take Notice. One dealing with a broker for the purchase of lands must take notice of the extent of the authority of the broker.

ESTOPPEL: Equitable Estoppel—Mending Hold in Litigation—Non-Communicated Reasons. A party may assign any reason, howsoever frivolous or unfounded, for repudiating a contract, and, after action is commenced, may mend his hold and assign a good reason, when the frivolous and unfounded reason was never communicated to the one commencing the suit, and in no wise influenced his action. So held where the original reasons assigned were stated to one's own agent and were never communicated to the other party.

BROKERS: Authority—Unauthorized Contract—Ratification. Evidence reviewed and held insufficient to show a ratification of an unauthorized contract of sale.

BROKERS: Pleading—Issue as to Agent's Authority. The issue as to the authority of a broker to enter into the contract in question is necessarily raised by a petition alleging that the contract was entered into pursuant to authority, followed by an answer by defendant denying such allegation.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

THURSDAY, JUNE 29, 1916.

SUIT for specific performance resulted in the dismissal of the petitions. Plaintiff appeals.—*Affirmed.*

*F. L. Anderson*, for appellant.

*William Smyth* and *E. A. Johnson*, for appellees.

LADD, J.—This is an action to enforce the specific performance of a contract for the sale of land. The defendant owned 72½ acres of land near Springville, and in winter, listed it with Crew & Son for sale:

"In consideration of their efforts to sell, I grant authority to Crew & Son to sell my 72½ acres, located 1½ m. Paralta, fair improvements, for $160 per acre, $500 down on contract, $1,500 on March 1, 1914, and the balance ten years, at five per cent. Said authority to be in effect till February 1, 1914. And in case they get me a buyer for said property, I agree to pay them a commission of two per cent. Signed March 5, 1913. John E. Wilson, Montezuma, Iowa."

Shortly thereafter, Crew & Son received an offer of $130 per acre from the plaintiff, and notified defendant, who responded as follows:

"Got your letter, but could of got that when there, but now by paying you will have to get close to our contract and prefer waiting a while and see if we can't get it, and now as ever yours, John E. Wilson, Montezuma, Iowa."

Thereupon, plaintiff raised the offer $5 per acre, and, upon being informed, the defendant wrote:

"Yes got yours and will say, if we can't do any better you fix that up at once, now I leave this with you payable at Montezuma, you fix this at once. Yours, John E. Wilson, Montezuma, Iowa."

Thereupon, I. H. Crew, of Crew & Son. notified defendant by telephone, who directed him to close the deal. The plaintiff then signed the agreement sued on, and paid Crew & Son $500 in cash. The defendant was notified of this by telephone, and a duplicate of the contract was mailed to him. This was returned in the same envelope used in mailing, and, upon being informed by O. P. Clark that plaintiff was the pur-

1. BROKERS: authority: authority to sell.

chaser, defendant started for Springville, meeting Clark on the way. They visited the office of Crew & Son and repudiated the contract. Other facts will appear, as the issues raised by the pleadings are considered.

I. The authority conferred on the agent was to sell, not merely to find a purchaser. This is the plain import of the language employed, and that this construction should be accorded the instrument of March 5, 1913, appears from *Hopwood v. Corbin*, 63 Iowa 218. Moreover, defendant, in response to Crew & Son's letter reporting the offer, directed: "You fix this at once. Now I leave this with you." This did not permit of any change in the terms, but left the firm to fix it, i. e., to make the sale. If, then, the agents were authorized to sell, the necessary inference is that they might do that which was essential to effect such sale; that is, either receive the cash payment exacted by the terms of the instrument conferring authority to sell to bind the bargain, or enter into a binding contract with the purchaser. Here, Crew & Son undertook to do both, but the payment was on the contract as made.

The terms on which Crew & Son were authorized to sell were specifically stated, but these were not observed in entering into the written contract. The agents were authorized to sell upon the payment of $500 cash, $1,500, March 1, 1914, and the balance in 10 years, at 5 per cent interest per annum. Under the contract as entered into by Crew & Son, the purchaser was to pay $1,500, *or more*, March 1, 1915, and was given the option to pay *$100, or any multiple thereof*, on any interest pay day.

2. SPECIFIC PER-FORMANCE: contracts enforceable: unauthorized contract by broker.

The contract also required defendant "to furnish an abstract showing good and sufficient title, clear and free of all liens and incumbrances." The agents were not authorized to make these changes, or to stipulate that their principal would furnish the abstract, and, for this reason, the contract was not

3. BROKERS: authority: agreement to furnish abstract.

binding on the defendant, unless subsequently validated. *Dodd v. Groos*, 175 Iowa 47.

Plaintiff, in dealing with Crew & Son, was bound to know the extent of their authority, and, in entering into the agreement and making payment, he is to be assumed to have been aware that such agents were acting in excess

4. BROKERS: authority: extent of authority: duty to take notice.

of the authority conferred.   31 Cyc. 1321. Moreover, the evidence shows that he was informed of the terms on which Crew & Son might sell.   There is no escape from the conclusion that Crew & Son exceeded their authority in making the contract with plaintiff and receiving payment thereon, and defendant is not bound thereby, unless estopped from objecting thereto or unless it be found that subsequently he ratified the same.

II.   Appellant contends, however, that (1) defendant subsequently ratified the contract, and (2) is estopped from interposing any defense other than that Crew & Son were authorized to sell to Clark only.   It appears

5. ESTOPPEL: equitable estoppel: mending hold in litigation: non-communicated reasons.

that, immediately upon being advised by Clark that plaintiff was the purchaser, defendant started for Springville, and, with Clark, visited the office of Crew & Son, where, upon being informed by I. H. Crew of the name of the proposed purchaser, defendant declared:

"Woods can't have that place: Otto Clark gets it.   Of course you will get your commission.   Otto Clark is to have the place and will pay your commission.   Fred Woods can't have it."

After protest against this course by Crew, he left the room, remarking that Clark was entitled to the place.   This was a direct repudiation of the alleged sale.   No reason was stated, other than that he intended to sell to another.   But defendant testified that, when telephoned to about the sale by I. H. Crew, he had told him not to sell to anyone other than to Clark, and that, upon visiting the office with Clark, he had said to Crew that he had no right to sell to the plain-

tiff, and that Clark was the man to have the place. The record has convinced us that the agents' authority was not limited to selling to Clark, and Crew & Son were informed at their office, for the first time, of defendant's design to sell to Clark. What was said amounted to a repudiation of the agreement to sell, and saying that he proposed to convey the land to Clark was giving no reason or ground for his conduct. But even if it were, what was said was to his own agent, and is not shown to have been communicated to the plaintiff or in any manner relied on in bringing suit. There was no basis for an estoppel, then; and the doctrine of *Donley v. Porter,* 119 Iowa 542, *McDermott v. Mahoney,* 139 Iowa 292, and other like decisions, that a party, having elected one ground of objection, cannot afterwards mend his hold and rely on another which might have been obviated had it been insisted on in time, does not apply. What was said does not appear to have influenced the course of plaintiff, and defendant is not estopped from interposing all the defenses pleaded.

III.   One Burroughs testified to sharing the office of Crew & Son, by having desk room therein, and to being present when defendant and Clark came in, and related that, after I. H. Crew had protested against the course of defendant, the latter said that the terms and price were all right, but Clark was to have the place. Though the details of the conversation were elicited on cross-examination, the reference to terms and price was not repeated, and the witness asserted that he did not remember anything else. Neither Crew nor Wilson testified to anything of the kind in detailing the conversation, and it may well be doubted whether the statement was made. The remark, if made, however, could not be construed as a ratification; for the defendant at the time absolutely repudiated the agreement by refusing to carry it out. If, by the expression, he can be said to have indicated the ground for refusing performance, there was no showing, as heretofore pointed out, that this was communicated to plain-

6. BROKERS: authority: unauthorized contract: ratification.

tiff, or that he relied thereon in bringing suit. The conversation was between defendant and his own agent, and it is not to be assumed, without proof, that what was said was communicated to plaintiff. The unauthorized agreement, as made by the agent, was not ratified by the principal.

IV. It is suggested that the authority of Crew & Son to enter into the written contract was not challenged by the answer. It did deny each and every allegation of the petition not admitted. The petition alleged that, pur-

7. BROKERS: pleading: issue as to agent's authority.

suant to the authority of the writing of March 5, 1913, Crew & Son executed the contract for defendant. The answer then denied that the contract was entered into in pursuance of such authority, or for the defendant. This necessarily raised the issue as to the agents' authority. If the petition be construed as alleging the execution of the contract, the denial raised the issue as to authority, for proof of the agents' authority was essential to establishing the making of the contract. *Gilbert v. Baxter*, 71 Iowa 327, 331. True, defendant pleaded that the agents were authorized to sell to Clark only, but an admission is not to be implied therefrom that, but for this, the contract was in accordance with the terms on which the agents might sell. Again, appellant argues that the postal card conferred authority to sell according to the agents' discretion. As previously said, it cannot be so construed. But, were it otherwise, the petition specifically pleaded that the contract was made in pursuance of the writing of March 5, 1913, authorizing the agents to sell, and not in pursuance of the postal card. Whether defendant received any of the money paid by plaintiff to Crew & Son is in dispute, but it is unnecessary to pass on the issue, for the agents were unauthorized to receive any payment on a contract entered into by them without authority. See *Dodd v. Groos*, supra. The cause is not one in which specific performance may be enforced even though the motive for the course pursued by defendant cannot be approved.

It may be conceded that brotherly love should prevail among these men (Clark, Wilson and Woods), whose wives are sisters, and that the sordid contest over the will of the father-in-law should have been forgotten long ago, and the doctrine of the golden rule applied in all their dealings. But they have chosen otherwise; and though it would seem that troubles enough probably will obstruct the way of each without the others' interposing stumbling blocks, they are to determine these matters, and we to apply the law to conditions as they appear, regardless of consequences.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.