LYDIA T. KESSLER, Appellant, v. THOMAS E. TERRELL, Appellee.

ESTOPPEL: Denying Intended Effect of Erroneous Deed. A grantor
1  who, in the execution and delivery of a deed, fully intends to convey all his interest in certain described realty, may not, on discovering that the instrument misdescribes the property, repudiate the *intended* effect of his deed as to the grantee, who has changed his position in reliance thereon.

QUIETING TITLE: Optional Remedies. An action to quiet title or
2  an action for the reformation of a deed may, under proper circumstances, be utilized to accomplish the same purpose.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY,
Judge.

NOVEMBER 15, 1921.

ACTION to quiet title to certain property. Defendant filed
a cross-petition, asking that the title to the said premises be
quieted in him. The court dismissed the plaintiff's petition,
and entered a decree quieting the title in the defendant, upon
his cross-petition. Plaintiff appeals.—*Reversed.*

*C. Ver Ploeg,* for appellant.

*David S. David,* for appellee.

FAVILLE, J.—One Thomas Terrell, now deceased, was for-
merly the owner of the premises in controversy. The said de-
cedent left a will, and also executed a deed to the property in
controversy. By the terms of both of said in-

1. ESTOPPEL:
denying in-
tended effect
of erroneous
deed.

struments, a life estate was created in the said
real estate in one Laurana M. Terrell, with the
remainder over in fee to the appellee, Thomas
E. Terrell. At the time of the death of the said ancestor, the
appellee was a minor. He is the grandson of the said ancestor,
Thomas Terrell. After the death of the said ancestor, Thomas,
his surviving children, including the father of the appellee, one
Samuel S. Terrell, secured a deed from the life tenant, Laurana
M. Terrell, conveying to the said children of Thomas Terrell,
as tenants in common, her life estate in said described premises.
The appellant herein is the daughter of the ancestor, Thomas,
and the aunt of the appellee.

Appellee testified that he left Oskaloosa, where the property
in question is situated, when about five or six years of age; that
he never saw his grandfather's will nor the deed, and first knew
that he had an interest in the property shortly before he became
of age, which was in January, 1919.

It appears that, some time in the fall of 1919, the various
heirs of the ancestor, who had secured the deed from the life
tenant, agreed among themselves to convey their interest in the
premises to the appellant for a consideration of $1,900, $300 to

be paid. to each of the said parties, except Samuel, the father of the appellee, who was to receive $400.

It is appellant's contention that, at the time of this arrangement, which, in the first instance, was oral, the understanding and agreement between appellant and Samuel was that the latter should be paid $400, and that the said Samuel was to undertake to secure from the appellee a quitclaim deed to his interest in the premises in controversy.

It is undisputed that appellant paid to Samuel the said sum of $400, and Samuel executed and delivered to the appellant a written instrument, as follows:

"It is hereby understood that Lydia T. Kessler has this day purchased from Samuel S. Terrell and Thomas E. Terrell, all the right, title and interest in the north half of Lot One, Block Three, Donahey's Addition to the city of Oskaloosa, Iowa, for the sum of four hundred dollars ($400.00) as follows: $50.00 cash, receipt of which is hereby acknowledged and $350.00 balance when deed is delivered.

"S. S. Terrell.

"Paid in full October 11, 1919.           S. S. Terrell."

The undisputed evidence, however, shows that all of these transactions to this point were carried on between the appellant and Samuel without the knowledge of the appellee. A quitclaim deed, reciting a consideration of $1.00, was executed by Samuel and his wife and forwarded to the appellee at Cherokee by Samuel. The appellee signed said quitclaim deed and returned the same to his father, Samuel, who delivered said deed to the appellant, and received from the appellant the said sum of $400. No part of this sum was ever paid to the appellee by the said Samuel.

Subsequently, it was discovered that the said deed contained an erroneous description, and did not convey the property in controversy; whereupon, a second deed was prepared, containing a correct description of the property, and forwarded to the appellee for signature. This deed the appellee refused to execute. Whereupon, this action was brought by the appellant, to quiet her title to the premises; and by cross-petition, the appellee sought to quiet the title to said premises as against any claim of the appellant therein.

Appellee testified that, at the time he signed the quitclaim deed which he received from his father, he did not know what his interest was in the property in controversy, and that he never gave his father or any other person any authority whatever to dispose of his interest in the property in any manner.

It does appear from the evidence that, in February, 1919, the appellee had written a letter to a party in Oskaloosa, stating that he desired to dispose of his interest in the premises in controversy; but there is no showing that anything was done by the party receiving this letter, or that the same came to the knowledge of the appellant in any way.

The father of the appellee testified that the agreement between him and the appellant was that he should be paid personally the sum of $400 for the execution and delivery of the quitclaim deed signed by himself and wife and the appellee. The evidence shows that he was paid the said $400 in checks that were made payable to said Samuel. He testified that there was nothing said between him and the appellant about paying anything to the appellee, and that he never did pay the appellee anything. He testifies that he forwarded the deed to the appellee and told him to sign and return it, without mentioning any pay whatever.

The appellee testified that, when he received the deed in question from his father, the latter did not tell him what it was, but told him to sign it. He said:

"I read it, and understood that it was the Thomas Terrell property in which I had an interest. I had been in correspondence with my father ever since I have been way from home, part of the time in regard to this property, and he told me what was going on. He wrote he was to get $400. There wasn't a thing said about me—not a word. They didn't even send expenses for me, which they agreed to do."

He further testified:

"I did not make any request of my father to find out how much money I was to get, before turning over the deed."

The father testified:

"I negotiated with the plaintiff about selling my share of the property. I was to receive $400. I and my wife signed it, and she paid me in two checks,—first check of $50, and the second check $350,—and the same were made payable to Samuel S.

Terrell. Thomas E. Terrell did not appear on those checks. They brought this deed to me and told me to send it to him, which I did. I don't know whether they ever paid him anything. I did not give him a penny of the $400. The verbal agreement was that I was to have $400. There was nothing said about paying him, at that time."

He further testified:

"The reason I sent this deed to my son to have him sign was because she agreed to pay me $400 probably, for my interest in that property. She paid me in two checks, $50 when this was written, and the other when deed returned from my son. I don't know why my son signed that deed. He had no reason. He had no contract to sign that deed."

He further testified:

"I was to give her this deed for $400, and I was to get my son's signature to the deed, and this is why I sent him the deed. * * * I sent up the papers, and did everything that they requested me to do. * * * Well, I suppose I did know that it was necessary to get my son's signature to that deed before I could get the $400."

The foregoing is the substance of the evidence in the case material to a determination of the question before us. We are not concerned, in this controversy, in regard to any matter between the appellee and Samuel S. Terrell. The sole question for our determination is whether or not, under the facts stated, the appellant can maintain this action to quiet her title to the premises in controversy, as against the appellee. It appears from the appellee's own testimony, that he knew that he had an interest in the premises in controversy. It also appears from his testimony that, at the request of his father, he signed and executed the quitclaim deed, for the purpose of conveying whatever interest he had in the premises to the appellant. He clearly understood, at the time that he signed the deed and forwarded it to his father, that he was signing it for the purpose of conveying his interest in the property left him by his grandfather. He supposed, at the time, that the deed correctly described that property, and his intention and purpose were to convey that property. He so understood it. There can be no other conclusion from the evidence.

It now appears that the deed contained an erroneous description of the property, and this action is brought to quiet appellant's title to the actual property intended to be conveyed by the deed. More than 20 days prior to the bringing of this action, the appellant requested the execution of a quitclaim deed to the premises, and tendered the appellee the sum of $1.25 for the execution of said deed, in pursuance of the provisions of Section 4226 of the Code. Appellant's action might more properly have been one to reform the deed that had been executed and delivered to her; but we think appellant had a right to proceed, under the statute, in the manner in which she did, to quiet the title to the premises that were in fact intended to be conveyed by the deed executed and delivered to her by the appellee.

The appellee knew that he owned this property, and at the request of his father, he executed and delivered to his father a quitclaim deed, for the express purpose of conveying his interest in the premises in controversy. He said that nothing whatever was said about pay, and that he had no dealings whatever directly with the appellant. Without any fraud, deception, or misunderstanding, he voluntarily executed a quitclaim deed, for the express purpose of conveying all the interest he had in these premises, and delivered it to his father, who turned it over to the appellant, who was the grantee named therein.

We do not believe that, under these circumstances, the appellee is now in a position to take advantage of the fact that the deed contained an erroneous description of the premises. It is not to be forgotten that he testified that he executed the deed for the purpose of conveying the interest that he had in the property he had received from his grandfather. Upon his own evidence, a court of equity would have been warranted in reforming the deed, to correct the misdescription of the premises. This proceeding to quiet the title is, in effect, no more than an action for reformation of the deed, in regard to the description of the property.

2. QUIETING TITLE: optional remedies.

As before stated, we are not concerned in this action with any question that there may be between the appellee and his father, Samuel S. Terrell, either legally or morally. The facts speak for themselves. But we feel constrained to hold that the

appellant was entitled to the relief demanded in her petition, and that the appellee's cross-petition should have been dismissed. The cause will be remanded to the district court for a decree in accordance with this opinion, or the parties may have a decree entered in this court, as they may see fit. It is so ordered.— *Reversed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.