HARVEY REUTER and VERNON REUTER, appellants, v. ROY A. MIDDLEBROOK et al., appellees.

No. 51529.

(Reported in 131 N.W.2d 817)

DECEMBER 15, 1964.

Kevin C. McGuire, of Cresco, and Isadore Meyer, of Decorah, for appellants.

Elwood, Anderson & Elwood by Frank D. Elwood and Dale Elwood, of Cresco, for appellees.

PETERSON, J.—Plaintiffs filed action against defendants to quiet title to a certain forty-acre tract in Howard County, Iowa, which had been the subject of negotiation for sale by plaintiffs and purchase by defendant Roy A. Middlebrook. Defendants Harlan Middlebrook and his wife were parties because they were going to be tenants and had entered into possession of the property. Defendant Roy A. Middlebrook filed answer denying the allegations of plaintiffs' petition, and alleging he had purchased the property under written agreement and prayed for dismissal of petition and for such other and further relief as may be deemed equitable.

The trial court dismissed plaintiffs' petition and entered judgment and decree holding that defendant Roy A. Middlebrook had purchased the property under written contract and ordering specific performance of such contract. Plaintiffs appeal.

I. Harvey and Vernon Reuter inherited eighty acres of farmland in Howard County from their father, William C. Reuter. Same was subject to a mortgage of $1400. The father's estate is still open and J. A. Thomson was appointed and is acting as executor thereof. He was not granted authority under the will to sell, and any sale needed the approval of both beneficiaries under the will. Vernon Reuter lived in Howard County, Iowa, and Harvey Reuter was at least temporarily living in Phoenix, Arizona. Vernon received a bid of $200 per acre from Roy A. Middlebrook and of $201 an acre from Donald Kach for the full eighty acres. The parties were going to meet Mr. Thom-

son, the executor, at the Cresco Union Savings Bank of which Mr. Thomson was president, to discuss the matter of further bidding. However, on April 16, 1963, Vernon asked Mr. Thomson to postpone the bidding because defendant Middlebrook had offered $8000 for the unimproved forty acres and had guaranteed to purchase the other forty acres from Vernon at anytime he desired to sell same.

Vernon was there in the city, but since Harvey was in Arizona it was necessary that he be called to discuss the matter of the bids and the sale of the property. Mr. Thomson told Vernon he would telephone Harvey and he called him on the morning of April 17, 1963.

Wilma Weinkauf testified she was the secretary for Mr. Thomson. She said it was a custom in the bank that she would take all long-distance calls in shorthand, and afterwards transcribe them. She states she took all of the two conversations between Harvey Reuter and Mr. Thomson, one in the forenoon of April 17, 1963, and the other at two o'clock in the afternoon. She read both conversations into the record and testified they were verbatim as spoken and as transcribed immediately afterwards. Mr. Thomson also testified they were correct as she read them into the record. They were as follows:

"Thomson: Roy Middlebrook has offered Vern this proposition on the farm. He will pay $8000 for the west forty acres—that is the forty without the buildings—and he will contract with Vern to buy the east forty acres with the buildings at the same price at anytime Vern wants to sell.

"Harvey: Whoever buys the place probably will be buying it with very little thought for the buildings. They are in such a state of repair that it would be very difficult to put them in working shape. That is, it would cost quite a bit of money.

"Thomson: You might keep in mind that there is a $1400 loan on the farm.

"Harvey: It is all right to go ahead, as far as I am concerned, if agreeable with Vern, and if he assumes the $1400 mortgage on the farm.

"Thomson: In other words, you want to get $8000 net. There will be no commission or fees involved, as far as I am con-

cerned. I will call you at two o'clock—your time—to let you know how this deal comes out. What is your phone number?

"Harvey: About 2 p.m.—the number is: 274-0789. Okie-dokie, and thanks for calling."

In accordance with this conversation, held in the morning, further negotiation was entered into between Mr. Thomson, Vernon and Mr Middlebrook. They finally agreed that Mr. Middlebrook would pay $8700 for the forty acres, which would give Harvey $8000 net and would pay one half of the mortgage of $1400 which was against the full eighty. Vernon and Mr. Thomson had a lawyer prepare the contract, Vernon signed it and Mr. Thomson signed it on behalf of Harvey in accordance with their conversation on the morning of April 17. Mr. Thomson then had another conversation with Harvey Reuter on the afternoon of April 17, which was as follows:

"Thomson: The deal has been completed, and the contract signed this morning. Roy has agreed to pay $8700, so you will get your $8000 clear.

"Harvey: Well that is fine, and thanks for your cooperation.

"Thomson: You will be getting two deeds for your signature before a Notary—one will be deeding forty acres to Roy, and the other will be your deeding your one-half interest in the east forty acres to Vern. You can then send the deeds to Nellie for her signature and she can return them to me.

"Harvey: Say, do you have my address?

"Thomson: No, I don't. I am glad you reminded me of that.

"Harvey: It is a long one—Lot 34 Canyon Acres Trailer Ranch, 8209 Black Canyon Highway, Phoenix 21, Arizona.

"Thomson: Thanks.

"Harvey: Okie-dokie, that is fine."

This is the contract entered into between the parties, and which is the subject of this litigation.

Plaintiff Harvey Reuter when he was a witness at the trial admitted in substance the correctness of the testimony of Mr. Thomson and Miss Weinkauf as to the conversations of April 17, 1963. His testimony was as follows:

"Q. Now, I will ask you this, Mr. Reuter. Isn't this what Mr. Thomson told you on the afternoon of the 17th of April,

1963; that is the call of the afternoon; isn't it true he said this or this in substance? 'The deal has been completed, and the contract signed this morning. Roy has agreed to pay $8700, so you will get your $8000 clear.' A. In substance, I would say perhaps that is right.

"Q. That is an accurate statement? A. I believe it is.

"Q. And—all right. And did you say this or this in substance. 'Well, that is fine, and thanks for your cooperation.' A. Yes."

Witness Harvey Reuter testified on further re-cross-examination that Mr. Thomson told him on the phone that the contract provided for $8700 for the west forty acres, that he knew that Vern was to retain the other forty acres; that the contract had been signed.

Mr. Middlebrook made his $2000 down payment and proceeded to take possession of the land. At that point something happened, because plaintiffs then decided for some reason the contract was not right. Their claim was that there should be more activity on the part of Mr. Thomson to secure a higher and better bid. Mr. Middlebrook's contention is that a contract was made, that Mr. Vernon Reuter was there and took part in all negotiations and personally signed the contract and that Mr. Thomson not only had secured approval of the terms of the contract over the telephone, but that after it was made he talked to Mr. Harvey Reuter the second time, and the contract was fully and completely ratified by Harvey.

█ █ The case and the situation is primarily a factual situation. Any questions of law involved are simple and practically undisputed. In general, appellants claim that a quieting-title suit is triable de novo in this court. There is no difference of opinion between the parties as to this point. Appellants also contend that a quieting-title suit is remedial in its nature and should be liberally construed. Bates v. Bates, 237 Iowa 1408, 24 N.W.2d 460. Appellants contend plaintiffs must secure a decree quieting their title on the strength of their own title and not on the weakness of the adversary. This is axiomatic and fundamental law and there is no question between the parties concerning said position. Jacobs v. Miller, 253 Iowa 213, 11 N.W.2d 673; 74 C. J. S., Quieting Title, section 17b.

Appellants contend Mr. Thomson was simply authorized to accept bids and was not authorized to sign a contract. However, it has been held in numerous cases that an agency for the signing of a contract may be established by express or implied authority and in many instances may embody both elements. Woods v. Wilson, 177 Iowa 361, 158 N.W. 495; Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646; Hall v. Crow, 240 Iowa 81, 34 N.W.2d 195.

Appellants did raise some question about the contract providing for the payment of the 1962 taxes and also that the contract provided that an abstract should be extended to date showing good and merchantable title in plaintiffs, and that Mr. Thomson and Harvey did not discuss this. As the trial court said there was no reason for complaint on these points, and no reason to say that the contract was not authorized because it contained these provisions, because such provisions are customary and usual in all contracts with reference to real estate and their presence would not ruin the contract on account of lack of authority.

The rulings of the trial court as to questions of fact present in the negotiations and in the making of the contract were not conclusive, because the case was tried in equity and is triable de novo. However, we give weight to the rulings and to the decision of the trial court with reference to the facts.

We approve the decision and the case is hereby—Affirmed.

All JUSTICES concur.