HOSTENG CONCRETE & GRAVEL, INC., Appellee,

v.

Lon R. TULLAR and Candace J. Tullar, Appellants.

No. 93–316.

Court of Appeals of Iowa.

Sept. 16, 1994.

Lon R. Tullar and Candace J. Tullar, pro se.

David P. Jennett and Colin McCullough of McCullough Law Firm, Sac City, for appellee.

Considered by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

DONIELSON, Chief Judge.

In 1976 Lon and Candace Tullar obtained a loan from First Federal Savings & Loan Association of Storm Lake ("First Federal") for the purpose of purchasing a home from the Lloyd Larson Trust and the Estate of

Mary P. Larson. The Tullars had executed their promissory note and mortgage with First Federal on January 16, 1976. On February 7, 1976, the deed conveying the interest of the Estate of Mary P. Larson was executed, and on February 12, 1976, the deed conveying the interest of the Lloyd Larson Trust was executed.

Both deeds were recorded on February 25, 1976. The legal description of the real estate conveyed to the Tullars from the Larsons' estate and trust is—

The North Half (N ½) of Lots five (5) and Six (6), block Twenty-six (26) and the **South Ten (10) feet of the vacant alley adjacent to the above lots**, original town of Sac City, Sac County, Iowa.

(Emphasis added.)

The highlighted portion of the property description is the center of the instant controversy. The First Federal mortgage was filed on February 25, 1976, and did not contain the highlighted portion of the legal description referencing the ten foot strip of land located in the alley adjacent to lots five and six.

During the 1980s the Tullars had made improvements on the property which extended to the ten-foot strip of land. Those improvements included an addition · to the house, a driveway, landscaping, and stairs leading to the house. Appellee Hosteng Concrete & Gravel (Hosteng) supplied materials for some of these improvements.

On February 8, 1988, · Hosteng filed a mechanic's lien for work and materials supplied during the period of July 29—November 14, 1987. The mechanic's lien contained the full legal description of the Tullars' property, including the ten-foot strip. In June 1990 Hosteng obtained a decree of foreclosure on the mechanic's lien and judgment was entered for the sum of $5,284.00 and interest and attorney fees. The decree specified the mechanic's lien was subject to the mortgage interest held by First Federal.

In December 1990 First Federal commenced foreclosure of its mortgage on the Tullars' real estate. Its foreclosure petition contained · the same legal description contained in its mortgage, and, as a result, in-

cluded no reference to the ten-foot strip of land in the alley. In April 1991 a foreclosure decree was entered and a special execution for the sale of the Tullars' property was issued. The legal description of the property contained in First Federal's foreclosure decree and related sheriff's sale documents did not include the ten-foot strip.

On July 10, 1991, the sheriff's sale of the Tullars' property was held and Hosteng purchased it in order to protect its position as a secondary lienholder. Hosteng bought the property for $35,000—an amount sufficient to satisfy First Federal's mortgage and Hosteng's mechanic's lien judgment. Hosteng subsequently filed a satisfaction of its judgment.

The Tullars did not redeem the property from Hosteng within the requisite six-month period, and a sheriff's deed was issued to Hosteng on January 13, 1992. The Tullars vacated the house on January 17, 1992, after Hosteng served them with a notice to quit.

After purchasing the home at the sheriff's sale, Hosteng performed maintenance and improvements on the property. At the time of the sale the house had no siding and Hosteng spent approximately $8,000 for new siding. It also spent a $1,000 for extensive repairs to the furnace in the home.

Subsequent to receiving the sheriff's deed Hosteng was informed by the county assessor that the legal description of the property on the sheriff's deed did not include the ten-foot strip. Lon Tullar testified he had not been aware, and in fact had been surprised, the sheriff's deed did not include the ten-foot strip of the vacated alley. He further testified "it was not of my understanding at the time we moved out that we still had that ten foot."

When the Tullars would not agree to execute a quit claim deed Hosteng filed this action seeking to quiet title in the real estate. The Tullars answered by claiming absolute ownership of the ten-foot strip of land, denying Hosteng's claim of ownership thereof and requesting a decree of quiet title be entered in their favor. After a trial on the matter the district court concluded the ten-foot strip had been omitted from the First Federal/Tul-

lar mortgage by mutual mistake, and it reformed the mortgage and quieted title in Hosteng.

The Tullars now appeal. They contend the district court erred in reforming the mortgage and quieting title in Hosteng. They claim they are entitled to quiet title in the ten-foot strip and to an easement over the adjacent lots.[1]

## I. *Standard of Review and Legal Principles*

■■■ Actions to quiet title are equitable proceedings. Iowa Code § 649.6 (1993). In this equity action our review is de novo. Iowa R.App.P. 4. Equity jurisdiction allows a court the necessary flexibility to determine the equities between the parties. *Farmers Sav. Bank, Joice v. Gerhart*, 372 N.W.2d 238, 245 (Iowa 1985). A court sitting in equity has considerable flexibility in framing a remedy. *Iowa Dep't of Social Services v. Blair*, 294 N.W.2d 567, 570 (Iowa 1980).

■■■ Equity is not bound by forms, fiction or technical rules, but will seek and determine the true situation. *Tri–State Refining and Inv. Co. v. Opdahl*, 481 N.W.2d 710, 712 (Iowa App.1991). Any situation that is contrary to equitable principles and can be redressed within the scope of judicial action may have a remedy devised to meet it, even though no similar relief has ever been given. *Becker v. Central States Health and Life Co. of Omaha*, 431 N.W.2d 354, 356 (Iowa 1988), *overruled on other grds, Johnston Equip. Corp. of Iowa v. Industrial Indemnity*, 489 N.W.2d 13 (Iowa 1992).

■■■ Sitting in equity a court has the power to grant reformation of an instrument. *See Walnut Street Baptist Church v. Oliphant*, 257 Iowa 879, 135 N.W.2d 97, 101 (1965). The party seeking reformation has the burden of establishing its contention by clear, satisfactory and convincing proof. *Kufer v. Carson*, 230 N.W.2d 500, 503 (Iowa 1975). In reforming an instrument a court does not change an agreement between the parties but changes a drafted instrument to conform to the parties' real agreement. *Wellman Sav. Bank v. Adams*, 454 N.W.2d 852, 855 (Iowa 1990)

The remedy of reformation of an instrument lies within the sound discretion of the equity court and depends on whether the remedy is essential to the ends of justice. *Id.* "F'acts and circumstances must be sufficiently compelling to constitute an effectual appeal to the conscience of the court and prompt it to interfere by reformation to mitigate the rigorous rules of law." *Kufer,* 230 N.W.2d at 504.

## II. *Conclusions*

■■ On appeal the Tullars contend Hosteng made no claim for reformation of the mortgage in its pleadings and the trial court erred in granting reformation in this case. Hosteng's petition contained a general prayer for equitable relief and its trial brief advocated reformation as a proper means to quiet title

■■ A quiet title suit is remedial in nature and should be liberally construed. *Reuter v. Middlebrook*, 257 Iowa 158, 131 N.W.2d 817, 820 (1964). "A prayer for general equitable relief, such as in a quiet title action, 'is to be construed liberally, and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence.'" *Dearinger v. Peery*, 387 N.W.2d 367, 371 (Iowa App.1986) (quoting *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 895 (Iowa 1981)); *see also, Jorge Constr. Co. v. Weigel Excavating and Grading Co.*, 343 N.W.2d 439, 441–42 (Iowa 1984) (prayers for general equitable relief are liberally construed).

In numerous Iowa cases reformation has been used in quiet title actions. *See, e.g., Olsen v. Olsen*, 236 Iowa 313, 18 N.W.2d 602 (1945); *Floberg v. Peterson*, 214 Iowa 1364, 242 N.W. 13 (1932); *Kessler v. Terrell*, 192 Iowa 442, 185 N.W. 15 (1921) (action to quiet title or action for reformation of instrument may be used to accomplish same purpose).

---

1. Hosteng claims the Tullars' appeal from the summary judgment order is untimely pursuant to Iowa R.App.P. 4. Pursuant to Iowa R.App.P.

5(b) we conclude the appeal from that motion is timely but mooted by the remainder of our opinion.

We concur with the trial court's decision to reform the First Federal/Tullar mortgage and the related subsequent proceedings to include the ten-foot strip of land.

■ Reformation may be had not only by the original parties to an instrument but also by a real party in interest claiming privity with a party to the instrument, such as a purchaser at an execution, judicial or foreclosure sale. 66 Am.Jur.2d *Reformation of Instruments* § 60 (2d ed. 1973); 76 C.J.S. *Reformation of Instruments* § 53 (1994); Annotation, *Right, After Foreclosure, to Reformation on Ground of Erroneous Description Originating in Mortgage,* 172 A.L.R. 655, 674 (1948).

■ The record in this case supports the trial court's finding of a mutual mistake in the execution of the First Federal/Tullar mortgage. The real estate conveyed to the Tullars by the Larsons' estate and trust included the ten-foot strip of land in the alley. The ten-foot strip was not conveyed separately from the homestead purchase financed by First Federal. Court records indicate the deeds conveying the Larson property to the Tullars were filed nearly simultaneously with the First Federal mortgage. Lon Tullar's testimony indicated he fully believed the ten-foot strip of land had been included in the mortgage and subjected to First Federal's foreclosure action in July 1992. At the time his family moved out of the home he no longer believed they had any ownership interest in the ten-foot strip.

■ In their reply brief the Tullars argue reformation without redemption is not a proper remedy in this case. The trial court rejected this argument by distinguishing the decision rendered in *Carrigg v. Mechanics Bank,* 136 Iowa 261, 111 N.W. 329 (1907). As a general rule the Iowa Supreme Court has held reformation of a foreclosed mortgage cannot cut off the equity of redemption. Instead, a new foreclosure sale and redemption period must be had upon reformation of the mortgage. *Id.* 136 Iowa at 266–67, 111 N.W. 329; *see also Skubal v. Meeker,* 279 N.W.2d 23, 27 (Iowa 1979) (reformation of forfeited real estate contract requires forfeiture process to be reinitiated).

The trial court found the Tullars had always assumed the disputed ten-foot strip was included in First Federal's mortgage and had been subjected to foreclosure and conveyance to Hosteng as part of the sheriff's deed. Under those circumstances the trial court concluded there would be no prejudice to the Tullars to reform the mortgage and subsequent proceedings to include the ten-foot strip of land.

Case law supports the trial court's decision. In *Provost v. Rebman,* 21 Iowa 419 (1866), the Iowa Supreme Court recognized the circumstances of the case were such that a foreclosed mortgage could be reformed and title quieted without requiring another foreclosure sale and redemption period. Implicit within the *Provost* decision is the fact that none of the parties with an interest in the land would be prejudiced by reformation of the mortgage and the subsequent proceedings.

The trial court is correct in that *Carrigg* is factually distinguishable. In *Carrigg* reformation was sought to add a seven-foot strip of land to a foreclosed mortgage. In that case Mr. Carrigg had mortgaged three lots to the defendant bank. A building constructed on the three lots overlapped onto a seven-foot strip of land not included in the mortgage. Mr. Carrigg subsequently executed a trust deed to a second bank to secure an indebtedness owed the second bank. The trust deed included the seven-foot strip of land. The defendant bank eventually foreclosed its mortgage and, after issuance of the sheriff's deed, learned of the omission of the seven-foot strip from its mortgage.

The Iowa Supreme Court could not grant reformation and quiet title in the defendant bank because of the interest of the second bank as the lienholder of record with an interest in the seven-foot strip. In *Carrigg* the mortgagee sought to reform the mortgage to the disadvantage of the other lienholder. It would have been grossly inequitable to have reformed the first bank's mortgage to add the seven-foot strip without ordering another foreclosure and opportunity for redemption by the second bank.

In the case at hand both the mortgagor (the Tullars) and the mortgagee (First Federal) presumed the ten-foot strip was included in the mortgage, and it is the other lienholder, Hosteng who seeks to reform the mortgage. Hosteng was both the successor in interest to First Federal and it held a separate lien interest in the ten-foot strip. To afford the Tullars another foreclosure sale and opportunity to redeem would amount to giving them two bites at the apple. They previously believed the ten-foot strip was included within the July 1992 foreclosure and they did not redeem the property during their redemption period. They are not prejudiced by the trial court's reformation of the mortgage and subsequent proceedings.

We affirm the trial court's decision to reform the mortgage and subsequent proceedings and to quiet title in the ten-foot strip in Hosteng.

**AFFIRMED.**

HABHAB, J., and CADY, J., take no part.