**DUBUQUE COMMUNITY SCHOOL DISTRICT, Plaintiff-Appellee,**

v.

**DUBUQUE EDUCATION ASSOCIATION, Margaret Tyler and Lenard D. Heath, Defendants-Appellants.**

**No. 2–65583.**

Court of Appeals of Iowa.

Nov. 24, 1981.

Charles E. Gribble of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for defendants-appellants.

Stephen J. Juergens and Allan J. Carew of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for plaintiff-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

CARTER, Judge.

The defendant, Dubuque Education Association (association), who is the authorized bargaining representative for the teachers within the Dubuque Community School District (school district), and the defendant Margaret Tyler and Lenard Heath, who are teachers within that school system, appeal from trial court order granting the school district's petition to vacate an arbitration decision entered upon a grievance filed by Tyler and Heath under the collective bargaining agreement in force between the school district and the association. Although we are not in complete agreement with all of the trial court's legal conclusions, we affirm the order voiding the decision of the arbitrator.

I. *Procedural Overview.* The issues leading to final judgment in the district court were presented by means of cross-motions for summary judgment. In arguing the issues on appeal, it appears that both parties treat the trial court's order as a judgment entered upon stipulated facts and do not suggest that any procedural limitations on the grant of summary judgment are significant to the decision on appeal. We therefore review the merits of the legal claims presented with the conviction that none of the parties asserts the existence of a genuine issue of material fact for purposes of defeating a motion for summary judgment. *See* Iowa R.Civ.P. 237(c).

II. *The Material Facts.* Margaret Tyler and Lenard Heath at all times material were teacher-employees of the school district represented for collective bargaining purposes by the association. Prior to February 20, 1978, teachers Tyler and Heath signed and returned the regular teaching contract for the 1978–1979 school year. These contracts were approved by the school district on Feburary 20, 1978. In July of 1978, Heath was advised by the school district that he was assigned the additional duty of instrumental music A. In August of 1978, Tyler was notified by the school district that she was assigned the additional duty of cheerleader advisor. These additional assignments given to Tyler and Heath were required to be performed after the close of the regular seven and one-half hour school day. Said extra-duty assignments were made the subject of a unilateral amendment by the school district to the regular teaching contracts of Tyler and Heath which had been approved on February 20, 1978. The amendment to Tyler's contract is dated August 14, 1978. The

amendment to Heath's contract is dated July 10, 1978. Each amendment specifically listed the additional duty required and the compensation for such extra-duty assignment, which was computed from section 19.10 and schedule E of the collective bargaining agreement in force for the period July 1, 1978 to June 30, 1980.

Both Tyler and Heath had performed similar additional or extra-duty assignments in prior years at the direction of the school district. Both resisted the requests that they do so during the 1978–79 school year. Both ultimately filed a grievance with respect to such extra-duty assignment in accordance with article IX of the collective bargaining agreement and requested to be released from these assignments. Both grievances asserted that the extra-duty assignments involved were a violation of specified portions of the collective bargaining agreement in force between the school district and the association.

The grievances of Tyler and Heath proceeded through the first three levels of the grievance process and were denied by the superintendent. Tyler and Heath then requested arbitration under level four of the grievance process. An arbitrator was selected and a consolidated hearing on both grievances was held by the arbitrator on April 10, 1979. At this hearing, Tyler, Heath, and the association all took the position that under the collective bargaining agreement then in force, extra-duty assignments to teachers beyond the regular seven and one-half hour work day were voluntary on the teacher's part and need not be accepted. The school district took the position that it had the right to make mandatory extra-duty assignments under section 20.7, The Code, and that such right was not abbrogated by any provision of the collective bargaining agreement or the teachers' individual contracts.

In late 1978 and early 1979, prior to the grievance hearing of April 10, 1979, involving Tyler and Heath, the school district and the association engaged in collective bargaining and statutory impasse procedures toward a revised collective bargaining agreement to become effective July 1, 1980. In that process, the parties appeared at a fact-finding hearing on January 11, 1979, wherein each party presented proposals to a fact-finder for inclusion in the revised collective bargaining agreement. In its fact-finding proposals, the association conceded that extra-duty teacher assignments under the 1978–80 agreement were mandatory. It proposed that in the revised agreement such assignments be made voluntary. The fact-finder ultimately recommended against such change. At the grievance arbitration hearing of Tyler and Heath, held April 10, 1979, the arbitrator received evidence of the stated bargaining position of the association in the January fact-finding hearing. On June 11, 1979, the arbitrator issued a written decision sustaining the grievances of Tyler and Heath. It is this decision which was challenged by the school district in the district court.

III. *Significant Provisions of the Collective Bargaining Agreement.* In attempting to gather from the record those contractual provisions which govern the dispute between the parties, we encounter a problem. The source of this problem is the decision of the arbitrator which states that the agreement in force when the grievance arose is the collective bargaining agreement for the period July 1, 1976 to June 30, 1978. The amendment to Tyler's contract which gave rise to her grievance is dated August 14, 1978, and was sent to her on August 21, 1978. The amendment to Heath's contract which gave rise to his grievance is dated July 10, 1978, and was sent to him on July 19, 1978. The extra compensation provided in these amendments is computed under the 1978–80 collective bargaining agreement. In the written grievances which were filed with the school district, Tyler asserted the date of violation to be September 7, 1978 and Heath asserted the date of violation to be September 22, 1978. The school year involved in both grievances is the 1978–79 school year.

Were we reviewing this matter in a setting not involving arbitration, we would have no problem in concluding from the

foregoing factors that the July 1, 1978 to June 30, 1980 collective bargaining agreement is the one which controls the rights of the parties. We are less than certain, however, the extent to which we can correct an error by the arbitrator as to which agreement is controlling. Fortunately, we need not face this issue directly for two reasons: First, it appears that the arbitrator did give some consideration to the 1978–80 agreement as well as the 1976–78 agreement in reaching his decision; and second, portions of the two agreements which are material to the present dispute do not differ significantly.

The similarity of the two agreements is shown by the following summary of their provisions. The 1976–78 agreement and the 1978–80 agreement both provide in the preamble that the agreement is intended "to set forth the negotiated understanding of the parties, and to provide procedures for the prompt and equitable resolution of grievances." In article III of each agreement, the employees' right to negotiate collectively is protected by nearly identical language. Article IX of each agreement provides in identical language that the school district shall have the exclusive right to "direct the work of its employees," and "transfer, assign, and retain employees." In each agreement, this right of the school district is subject to the following limitation: "The rights, powers, authorities and duties set forth above are subject only to such limitations as are expressly set forth in this agreement." The grievance procedures are basically identical in the two agreements. Both define a grievance as "a claim by the aggrieved employee or the Association that there has been a violation, misinterpretation or misapplication of a specific provision of this Agreement." Both agreements provide for a four level review of grievances culminating in arbitration. Both agreements provide that "the decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties."

With respect to the area of working hours and salaries, the language of the 1976–78 agreement differs slightly from the language of the 1978–80 agreement. It provides in section 20.1:

The salary schedules for employees covered by this Agreement appear in the Appendix as Schedules C, D, and E. These schedules are for basic services rendered during the in-school work year and are exclusive of other remuneration for services rendered during or beyond this period as enumerated in later sections of this ARTICLE. The in-school work year for employees covered by this Agreement shall not exceed one-hundred ninety-one (191) days, including one-hundred eighty-two (182) teaching days and nine (9) in-service days. The work day shall be defined as a seven and one-half (7½) hour day, including a twenty-five (25) minute duty free lunch.

Schedule E referred to in the 1976–78 agreement describes the basis for computing supplemental pay for "extra-duty assignment" including cheerleading and instrumental A.

The provision for working hours and salaries in the 1978–80 collective bargaining agreement is found in sections 19.1 and 19.10 which provide:

19.1 Schedules—Schedules C and D appearing in the Appendix are for basic services rendered during the in-school work year. The in-school work year for employees covered by this Agreement shall not exceed 189 days, including 182 teaching days and seven (7) in-service days. A regular workday shall be seven and one-half (7½) hours per day, including a minimum daily twenty-five (25) minute duty free lunch period.

In addition to the regular school day, staff members may be required to spend a maximum of fourteen (14) hours per year for collateral duties to be used for— 1) Open House, 2) P.T.A. Meetings or similar Parent/Teacher groups, 3) Faculty and/or Department Meetings.

19.10 Schedules—Schedules E and F are for emunerated assigned services beyond the regular work day.

Schedule E referred to in the 1978–80 agreement describes the basis for computing supplemental pay for "extra-duty assignments" including cheerleading and instrumental A.

IV. *The Basis of the Trial Court's Order.* The trial court declared the decision of the arbitrator to be of no force and effect on four separate grounds. These were: (1) that the subject of the grievance was not a matter covered by the collective bargaining agreement and thus was not arbitrable under that agreement; (2) that the arbitrator's decision invalidly restricted the rights of the school district to direct employees under section 20.7, The Code; (3) that the contract is incapable of being interpreted in a manner which would sustain the arbitrator's decision; and (4) that the arbitrator's decision is outside the matters included within the submission. In arguing for reversal of the district court's decision, Tyler, Heath, and the association urge that the converse is true as to each of these propositions.

■ V. *Arbitrability and Retained Statutory Authority.* The issues of what is arbitrable under the agreement and what rights are reserved to the school district by statute are so interrelated that we consider them together. The trial court concluded that the subject of the grievance was not covered by a specific provision of the collective bargaining agreement and therefore was not the subject of arbitration. Tyler, Heath, and the association urge that this was error. Based on our decision in *Ottumwa Community School District v. Ottumwa Educational Association,* 297 N.W.2d 228, 231 (Iowa App.1980), and the broad concept of arbitrability applied in *Sergeant Bluff-Luton Educational Association v. Sergeant-Bluff-Luton Community School District,* 282 N.W.2d 144, 148 (Iowa 1979), we agree with appellants' contention. The grievances of Tyler and Heath each allege a violation, misinterpretation, or misapplication of article XIX of the collective bargaining agreement in force. We conclude this allegation has reference to sections 19.1 and 19.10 of the 1978–80 agreement because

article XIX of the 1976–78 agreement deals only with insurance and has no apparent bearing on the subject matter of the grievances.

Sections 19.1 and 19.10 of the 1978–80 agreement do relate to the subject matter of the grievances and their interpretations are properly called into question through the arbitration of said grievances. As we stated in *Ottumwa,* 297 N.W.2d at 231, "The school district, as one of the contracting parties, should not be permitted to defeat the association's right to binding arbitration by asserting that the contract provisions alleged to have been violated do not apply or that other inconsistent contract provisions do apply. These are matters within the scope of what has been agreed shall be arbitrated." This principle is equally applicable in the present case.

■ We also agree with the appellants' contentions that the trial court incorrectly concluded that the arbitrator's decision improperly abrogated rights reserved to the employer under section 20.7, The Code. In *Ottumwa,* 297 N.W.2d at 232, we stated: "Section 20.7, the Code, does not retain for the employer a right to act unilaterally on those matters which have been made the subject of collective bargaining."

In the present case, the subject of the grievance concerns working hours, clearly a proper subject for collective bargaining under section 20.9, The Code. A provision on working hours is contained in the collective bargaining agreement. A dispute concerning its applicability is therefore a proper subject of compulsory arbitration under article XI of the agreement. The trial court incorrectly concluded that it was not.

VI. *Erroneous Interpretation of the Agreement.* Tyler, Heath, and the association also urge that to the extent the trial court found that nothing in the collective bargaining agreement sustains a finding that extra-duty assignments were voluntary rather than mandatory and that the decision of the arbitrator is "in manifest and total disregard of the provisions of the agreement," such finding constitutes improper judicial review of the arbitrator's

award. We agree with appellants' contentions in part.

■ As stated in *Sergeant Bluff*, 282 N.W.2d at 148: "Once arbitrability of the issue is established, the sole question to be determined by the court on review is whether the arbitrator's award 'drew its essence' from the collective bargaining agreement. It is not the function of the court to determine whether the arbitrator has resolved the grievance correctly." We have already determined that the interpretation of those provisions of the applicable collective bargaining agreement dealing with working hours, as applied to the existing dispute between the parties, is an arbitrable issue. We also find that an award based on such interpretation would necessarily "draw its essence" from the agreement. Had the awards to Tyler and Heath been based on a favorable interpretation of the work hours clause in the agreement, the awards would be unassailable upon judicial review. However, from our reading of the arbitrator's decision, it appears that it was not based upon such an interpretation of the agreement.

■ Our reading of the arbitrator's decision indicates that the arbitrator ultimately accepted the school district's position that extra-duty assignments might be required of teachers without violating the master contract. In this regard the arbitration decision states:

> The Board could have made extra duty a part of the original contract offered to the grievants, at which point they would have had a chance to accept or reject the contract as a whole. But the School Board submitted a contract without extra duty being included, which contract was accepted. The Board is then bound by the contract agreed to, and does not have the right to change that contract without the approval of the other party.
>
> To summarize: The Collective Bargaining Agreement does not make mandatory the acceptance of extra-duty assignments of the type involved in this grievance. Such extra-duty assignments were not made a part of the teaching contracts.

The School Board cannot force an amendment of those contracts at a later date, after acceptance and execution, without the agreement of the other parties to said contracts. It does, however, have the right to make extra duty a part of the original contract.

The basis for sustaining the grievances of Tyler and Heath was therefore not the arbitrator's interpretation of any provision of the collective bargaining agreement alleged to have been violated. The master agreement affects the individual contracts only as to substantive provisions. In the present case, neither the 1976–78 nor the 1978–80 collective bargaining agreement purports to control in any way the mode of execution of or amendment to individual teaching contracts.

VII. *The Extent of Issues Entrusted to Submission.* We now consider whether, considering our rejection of the other reasons advanced by the trial court for vacating the award, it was nonetheless correct in doing so on the ground that it was outside the matters submitted to arbitration. In this regard, the trial court found and concluded:

> An arbitration award must be limited to matters included within the agreement for submission. His award must be based upon the collective bargaining agreement. . . . An award on matters not included in the submission is void and open to attack on the ground the arbitrator exceeded his powers.

We conclude that the trial court was correct as to this aspect of the case.

■ Indeed, as we read appellants' argument on this issue (Brief of Appellants 21–25), we cannot find where they directly challenge the trial court's conclusion on the merits. Rather, appellants seek to avoid the issue by asserting that the arbitrator did not really decide the case on the basis of whether the school district might invoke the extra-duty assignments through amendment to the contracts. Appellants assert that the basis for the arbitration decision was that "the arbitrator found in no uncertain terms that such mandatory assign-

ments were precluded by the collective agreement." (Brief of Appellants at 24). Such contention is simply untenable in light of what is clearly stated in the arbitrator's decision. In this written decision, it is stated not only once, but twice, that the school district could have included the extra-duty assignments in the initial 1978–79 contracts with Tyler and Heath.[1] Obviously, if it had been determined by the arbitrator that such mandatory assignments were prohibited by the master agreement, these statements could not and would not have been made. As we have determined in the prior division of this decision, the arbitrator determined that the master agreement did not preclude mandatory extra-duty assignments and decided the case on a procedural issue as to how and when such assignments were made.

The actions of the arbitrator in the present case are not at all similar to those which were upheld in *Sergeant Bluff.* There the arbitrator, being unable to resolve the issues which were submitted by resort to salary provisions of the contract, considered "implied management rights and obligations." It was held that the award was nonetheless drawn from the "essence of the agreement." The concept of "essence of the agreement" applied in *Sergeant Bluff* relates to the substance of rights and obligations imposed under a master collective bargaining agreement within the general subject matter contained in that agreement and within the issues submitted for arbitration. In the present case, the arbitrator found that the substance of the agreement supported the school district's position on the issues submitted for arbitration but notwithstanding said finding, sustained the grievances on a procedural

ground not within the general subject matter of the master agreement and not within the matters submitted to arbitration.[2] An award based on matters not within the submission is of no force and effect. *See* 5 Am.Jur.2d Arbitration and Award, section 137 at 619.

If the matters on which the arbitrator had rested his decision had been within the scope of the issues which were submitted for arbitration, we would doubtless be without power to review the merits of the arbitrator's decision that the amendments to the teachers' contracts were improper. Because we hold that that issue was not submitted, we are without reluctance to express our view that if, as found by the arbitrator, the subject matter of the amendment was not precluded by the master agreement, the amendments are not otherwise improper. These amendments only serve to reduce to writing the school district's exercise of the continuing power conferred upon it by section 20.7, The Code, to assign personnel. Such power exists in the absence of a contractual relinquishment or limitation of such right in the master agreement or the individual contracts. In this regard, the trial court observed:

> The Court believes Mr. Cohen [the arbitrator] confused the question of the School District's right to assign with the general contract principle covering a unilateral change of contract. The School District did not surrender its rights to assign when it entered into individual contracts with Defendants Tyler and Heath. The law requires individual written contracts with teachers be issued in the spring of each year for the next school year. If the Arbitrator's conclusion were followed, the School District

1. These statements are: (1) "The board could have made extra duty a part of the original contract offered to the grievants" (decision of the Arbitrator at 10); and (2) "It [the school district] does, however, have the right to make extra duty a part of the original contract" (decision of the Arbitrator at 11).

2. In this regard we can properly draw a distinction between those issues which can be arbitrable under the agreement and those issues

which are in fact submitted to arbitration. All issues which are arbitrable are not necessarily entrusted to the arbitrator in a given dispute. In the present case, we do not believe that the issue of the school district's right to make unilateral amendments to teacher's contracts was arbitrable under the master agreement, but even if it were, it clearly was not a matter submitted for determination in the present arbitration.

could never make .extra duty work assignments for the school year after the preceding spring, unless the teachers involved consented. This was not the language of the individual teaching contracts or the collective bargaining Agreement involved in this case. Further, such a rule would be contrary to the law discussed above.

We agree fully with this observation. Based upon the considerations discussed, we find the trial court acted correctly in vacating the award on the basis it was beyond the scope of those matters entrusted to arbitration. The judgment of the trial court is affirmed.

AFFIRMED.