**L. Jean BULLIS, Appellee,**

**v.**

**BEAR, STEARNS & CO., INC. and Bear, Stearns Securities Corp., Appellants,**

**and**

**Dean E. Sukowatey and Bryan K. Foster, Defendants.**

**No. 95-1319.**

Supreme Court of Iowa.

Sept. 18, 1996.

Dennis W. Johnson and Jeffrey M. Hurlburt of Dorsey & Whitney P.L.L.P., Des Moines, for appellants.

James L. Pray of Haroldson, Pray & Winjum, P.C., Johnston, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Bear Stearns & Co. and Bear Stearns Securities Corp. (Bear Stearns) appeal from a ruling denying a motion to stay proceedings and compel arbitration of the claims made against them in a civil action by the plaintiff, L. Jean Bullis (Bullis). After reviewing the record and considering the arguments presented, we conclude that the controversy between Bear Stearns and Bullis is arbitrable. Consequently, we reverse the order of the district court.

## I. *Facts.*

L. Jean Bullis, the plaintiff-appellee, is a seventy-eight-year-old widow and a resident of Urbandale. Shortly after her husband's death in 1986, Dean Sukowatey, then a broker with Merrill Lynch, was one of many persons who approached her and offered to help with her investments. Bullis accepted his help. In late 1992, on the advice of Sukowatey, she opened an account with Bear Stearns through which she invested approximately $535,000. At this time, Sukowatey was no longer associated with Merrill Lynch.

In early 1993, Sukowatey contacted Bullis regarding an investment opportunity with Silver Creek Partners. This was a Colorado-based entity formed for the sole purpose of buying and selling securities. Sukowatey and Bryan Foster were its managing partners. Bullis signed an agreement on April 28, 1993, purporting to make her a partner in Silver Creek. In a letter, also dated April 28, 1993, Bullis directed Bear Stearns to transfer the securities in her personal account to an account being opened with the same broker in the name of Silver Creek Partners. Sukowatey opened the Silver Creek account on May 10, 1993, and Bullis's securities were transferred into it at that time. The value of the securities so transferred was approximately $364,622. The

partnership account suffered heavy losses and was eventually liquidated for $29,500.

According to the April 28, 1993 agreement signed by Bullis, the purpose of Silver Creek Partners was "to establish a clearing account with Bear Stearns & Co., Inc. ... and to use the account to generate profits by trading in securities." The partnership agreement refers to Bullis interchangeably as an "investor" and a "partner." Foster and Sukowatey, as managing partners, were to have "full and exclusive responsibility" for the partnership's business. The partnership agreement also provided: "Nothing herein contained shall be construed to constitute any Partner the agent of another Partner, except as expressly provided herein...."

When Bullis opened her personal account with Bear Stearns in 1992, she executed a customer agreement. That agreement contained an arbitration clause. The clause provides, in part: "You agree, and by maintaining an account for you Bear Stearns agrees, that controversies arising between you and Bear Stearns ... whether arising prior to, on or subsequent to the date hereof, shall be determined by arbitration." An identical arbitration clause was contained in the customer agreement executed by Silver Creek Partners.

Bullis filed suit against Foster and Sukowatey in May 1994. On April 18, 1995, Bullis successfully moved to amend her petition, adding Bear Stearns as a party. Bullis has since dismissed Foster and Sukowatey from the case. On May 23, 1995, Bear Stearns moved to stay the proceedings and to compel arbitration, which Bullis resisted. This issue was submitted to the court on stipulated exhibits and affidavits. The court denied the motion. Bear Stearns unsuccessfully moved under Iowa Rule of Civil Procedure 179(b) to reconsider and modify the order of denial. Our review of this law-tried issue is for errors at law. *Humphreys v. Joe Johnston Law Firm, P.C.,* 491 N.W.2d 513, 514 (Iowa 1992); Iowa R.App.P. 4.

## II. *Issues Presented.*

Bear Stearns advances two theories by which Bullis may be bound to arbitrate this dispute. First, it asserts that this controversy is within the scope of the arbitration clause Bullis signed when she opened her personal account. Second, they assert that Bullis's claims are subject to the arbitration agreement pertaining to the Silver Creek account.

## III. *Whether Bullis is Subject to an Agreement to Arbitrate.*

All parties concede that this controversy is governed by the Federal Arbitration Act. 9 U.S.C. §§ 1–14. This legislation governs all written agreements to arbitrate in any "contract evidencing a transaction involving commerce," and it provides that all such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. A party to an arbitration agreement may petition for a stay of judicial proceedings pending arbitration, *id.* § 3, and a court, on a motion of a party to an arbitration agreement, may compel arbitration, *id.* § 4. If the existence of an arbitration agreement is disputed, the court must try that issue. *Id.*

■ To compel arbitration, Bear Stearns "must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." *McCarthy v. Azure,* 22 F.3d 351, 354–55 (1st Cir.1994). Specifically, Bear Stearns must show that, under Iowa law, Bullis is bound by one of the two arbitration agreements at issue. *First Options of Chicago, Inc. v. Kaplan,* — U.S. —, —, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995); *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426, 437 n. 9 (1987); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45–46 (2d Cir.1993). The Iowa law applied must not discriminate against arbitration agreements in establishing their validity; in other words, the Iowa law must not treat arbitration agreements differently than is provided in the general contract law of this jurisdiction. *Perry,* 482 U.S. at 492 n. 9, 107 S.Ct. at 2527 n. 9, 96 L.Ed.2d at 437 n. 9.

We have stated that "arbitration is a matter of contract and parties cannot be com-

pelled to arbitrate a question which they have not agreed to arbitrate." *Local Union No. 721, United Packinghouse Food & Allied Workers v. Needham Packing Co.*, 260 Iowa 908, 917, 151 N.W.2d 540, 546, *cert. denied*, 389 U.S. 830, 88 S.Ct. 94, 19 L.Ed.2d 87 (1967); *see also Dubuque Community Sch. Dist. v. Dubuque Educ. Ass'n*, 315 N.W.2d 847, 853–54 (Iowa App.1981). In deciding the issue of arbitrability, we will assume that Bullis's agreement to arbitrate disputes regarding her personal account did not extend to disputes involving the Silver Creek account. Consequently, we consider whether the arbitration agreement in the partnership account is binding upon her. Bullis asserts that, because she did not sign the Silver Creek agreement, she cannot be bound by the arbitration agreement in that contract. We are convinced however that, under well-recognized principles of agency law, nonsignatories to an agreement may in some circumstances be bound thereby. Consistent with this principle, it has been recognized that a nonsignatory can be bound by an agreement to arbitrate. *A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318, 320 (2d Cir. 1974).

■ Whether one is bound by an arbitration agreement that she did not sign depends on general principles of contract law, *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir.1960), and "ordinary agency law." *A/S Custodia*, 503 F.2d at 320. The district court's refusal to compel arbitration was based on its conclusion that Bear Stearns had failed to establish that Bullis was a partner in Silver Creek, in whose name the account was opened and the arbitration agreement was made. We do not find that circumstance to be dispositive. The issue is whether the Silver Creek managing partners were acting as her agents with power to bind her to arbitrate disputes over Bear Stearns' handling of funds or securities traded in the Silver Creek account.

■ Agency is a contractual relationship. *Andrew v. Farmers' Sav. Bank*, 239 N.W. 551, 552 (Iowa 1931). The power of an agent to enter contracts on behalf of his principal may be express or implied. *Reuter v. Middlebrook*, 257 Iowa 158, 173, 131

N.W.2d 817, 820 (1964). In addition, the agent's power includes all powers necessarily implied from ·an express grant of power. *Hall v. Crow*, 240 Iowa 81, 90, 34 N.W.2d 195, 200 (1949).

■ The partnership agreement signed by Bullis states that no agency relationship exists "except as expressly provided herein." One of the express purposes of the Silver Creek partnership was to open an account at Bear Stearns "funded with monies contributed to the Partnership by the Investors." The overarching purpose of the partnership was to make trades involving Bullis's investment. The account was opened. Bullis authorized Bear Stearns to transfer the balance of her personal account to the Silver Creek account. She authorized Foster and Sukowatey to make trades through that account. These facts establish, as a matter of law, that the Silver Creek partnership was acting as Bullis's agent when it opened the partnership account. Silver Creek was acting within the scope of its express authority both in signing the arbitration agreement and in making the trades. Consequently, Bullis is bound by the agreement to arbitrate disputes with Bear Stearns concerning the latter's handling of the Silver Creek account. No fact in the record leads to a contrary conclusion. The district court erred when it did not grant Bear Stearns' motion to stay the civil action and compel arbitration.

### IV. *Conclusion.*

We conclude, as a matter of law, that the Silver Creek partnership was acting as Bullis's agent when it signed the customer agreement containing an arbitration clause. Bullis is bound by that clause. Bear Stearns is thus entitled to a stay of proceedings and an order compelling arbitration. The order of the district court denying that relief is reversed. The case is remanded to that court for an order staying proceedings and compelling arbitration.

**REVERSED AND REMANDED.**