**PENFORD PRODUCTS CO.,**
Plaintiff–Appellee,

v.

**C.J. SCHNEIDER ENGINEERING CO., INC., n/k/a Praj Schneider,**
Defendant,

and

**Lexington Insurance Company,**
Intervenor–Appellant.

No. 10–1754.

Court of Appeals of Iowa.

Dec. 21, 2011.

Don R. Sampen, Edward M. Kay, Kimbley A. Kearney, and Ilene M. Korey of Clausen Miller, P.C., Chicago, Illinois, and William P. Rector of Bozeman, Neighbour, Patton & Noe, L.L.P., Moline, Illinois, for appellant.

Roger W. Stone and Mark A. Roberts of Simmons, Perrine, Moyer & Bergman, P.L.C., Cedar Rapids, for appellee.

Heard by VOGEL, P.J., and POTTERFIELD and DANILSON, JJ.

VOGEL, P.J.

### I. Background Facts and Proceedings.

Penford Products Company (Penford) entered into a contract with C.J. Schneider Engineering Company, Inc. (CJS) for professional services related to the design and construction of an ethanol plant in Cedar Rapids. Penford and CJS's contract provided that all disputes between the parties would be settled by arbitration, which was later invoked when Penford filed a demand for arbitration asserting claims relating to an alleged defective design of the plant. CJS tendered its defense to Lexington Insurance Company (Lexington), which had issued a professional liability policy to CJS.[1] Lexington claimed there was no coverage under a liability policy and refused to defend CJS. On December 7, 2009, Penford and CJS entered into an Assignment of Cause of Action and Settlement Agreement, in which CJS assigned its rights against Lexington to Penford. On December 14, 2008, an arbitration award was issued in favor of Penford and against CJS in the amount of $7,075,000.

On December 28, 2009, Penford filed a petition to confirm the arbitration award in district court. On February 23, 2010, the district court entered judgment in favor of Penford and against CJS in the amount of $7,075,000. In order to collect on the judgment, Penford commenced garnishment proceedings. See Iowa Code ch. 642 (2009) (Garnishment). Penford served a notice of garnishment and interrogatories on Lexington. In its answers to the inter-

---

1. The policy was issued to Praj Schneider, Inc., which stated it had purchased CJS.

rogatories, Lexington denied that it was indebted to or had in its possession any property of the judgment-debtor (CJS). On April 21, 2010, Penford filed a pleading controverting the garnishee's answers and a jury demand. It controverted the following questions:

a. "Are you indebted to the Judgment Debtor, or do you owe him money or property which is not yet due?" Garnishee's answer: "No."

b. "Do you have in your possession or control any property, rights or credit of the Judgment Debtor?" Garnishee's answer: "No."

c. "Do you know of any debts owing the Judgment Debtor, due or not due; or any property, rights or Credits belonging to him and now in the possession or under the control of other?" Garnishee's answer: "No."

d. "Do you deny that claim ... number 030–264076 is covered under policy number 1205820?" Garnishee's answer: "Yes."

e. "With regard to claim number 030–264076 under policy number 1205820, do you claim you owe defendant (Praj Schneider) any sum or obligations arising from this claim?" Garnishee's answer: "No."

Penford "contend[ed] the Garnishee [Lexington] was indebted to [the Judgment Debtor] CJS pursuant to the Policy." Lexington answered, denying it was indebted to CJS and asserting various defenses.

On June 9, 2010, Lexington filed a motion to dismiss, or to stay proceedings and compel arbitration. Lexington denied that Penford's defective-design claims against CJS were covered by the policy that Lexington had issued to CJS. It also argued that because there was a disagreement over the interpretation of the policy and the contract between CJS and Lexington provided for such a disagreement to be submitted to arbitration, Penford was required to arbitrate the dispute of whether the policy provided coverage for Penford's claims against CJS. Subsequently, Penford resisted Lexington's motion and filed a motion to stay arbitration. A hearing was held in August 2010. On September 29, 2010, the district court issued its ruling. It found there was no privity between Penford and Lexington that would require Penford to arbitrate with Lexington. Therefore, the court denied Lexington's motion to dismiss, or stay and compel arbitration. Because of its ruling, the district court found Penford's motion was moot. Lexington appeals. *See* Iowa Code § 679A.17(1)(a) (2009) ("An appeal may be taken from ... [a]n order denying an application to compel arbitration made under section 679A.2.").

## II. Standard of Review.

■ Our review is for errors at law. Iowa R.App. P. 6.904; *Bullis v. Bear, Stearns & Co., Inc.,* 553 N.W.2d 599, 601 (Iowa 1996); *Padzensky v. Kinzenbaw,* 343 N.W.2d 467, 469 (Iowa 1984) (explaining that garnishment proceedings are at law and our review is at law).

## III. Analysis.

■ On appeal, Lexington asserts that Penford, seeking to garnish the proceeds of the insurance policy between Lexington and CJS, stands in the shoes of CJS and must abide by the arbitration clause in the policy. However, Penford did not bring an action against Lexington to enforce the policy under the assignment. Rather, it brought a garnishment proceeding against Lexington, as an entity that Penford believes holds an asset belonging to CJS. In the district court, Lexington did not attempt to assert that the assignment controlled the course of proceedings, nor did

it raise this issue on appeal until the reply brief was filed. *See Young v. Gregg,* 480 N.W.2d 75, 78 (Iowa 1992) ("[W]e have long held that an issue cannot be asserted for the first time in a reply brief."). Consequently, the assignment is not at issue in the present case. Therefore, our analysis is whether the garnishment statute in Iowa holds the remedy Penford seeks, such that the district court's denial of Lexington's motion to dismiss should be affirmed.

■■■ Further, the underlying judgment Penford obtained against CJS is not at issue here for two reasons. First, Lexington denied coverage and refused to defend CJS against Penford, even under a reservation of rights defense. *See Scheetz v. IMT Ins. Co. (Mut.),* 324 N.W.2d 302, 304–05 (Iowa 1982) ("A waiver of a contract right by an insurance company is an election not to take advantage of a technical defense and should be looked upon with liberality."). Lexington relinquished a known right awarded in a contract by failing to defend/arbitrate. "[I]n the absence of fraud or collusion, an insurance company that refuses to defend its insured is bound by a judgment against the insured with respect to all matters which were litigated or could have been litigated in that action." *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 532 (Iowa 1995). Second, in a garnishment proceeding, the garnishee cannot challenge the judgment against the principal-defendant. *See Henny Buggy Co. v. Patt,* 73 Iowa 485, 35 N.W. 587, 589 (1887) ("The proceedings, not being void, cannot be questioned by the garnishee."). Therefore, the only issue on appeal is whether a garnishor is bound by an arbitration clause in a contract between the judgment-debtor and the garnishee.

■■■ "Garnishment is a species of attachment. It is a proceeding whereby a plaintiff-creditor (garnishor) seeks to subject to his or her claim the property or money of a third party (garnishee) owed by such party to defendant-debtor (principal defendant)." *Van Maanen v. Van Maanen,* 360 N.W.2d 758, 761 (Iowa 1985); *see also* 6 Am.Jur.2d *Attachment and Garnishment* § 2. Essentially, garnishment is used to attach the defendant-debtor's property that is in the possession of a third party, permitting the plaintiff-creditor to enforce its judgment even though the defendant-debtor is not in possession of the property. 6 Am.Jur.2d *Attachment and Garnishment* § 2. "The demand upon the garnishee must be such that the principal defendant could have maintained an action in his or her own right against the garnishee for it. Garnishment is effective only to the extent of the debtor's interest in the property attached." *Van Maanen,* 360 N.W.2d at 761.

■■■ Where an insurer issues a liability policy, "the insurer promises to make payment when the insured becomes legally liable to the third person" and when the insured becomes legally liable to the third person "a debt arises from the insurer to its insured." *Steffens v. Am. Standard Ins. Co. of Wis.,* 181 N.W.2d 174, 175 (Iowa 1970). After recovering a judgment against the insured, the injured party "may reach the debt of the insurer to the insured in any manner provided in the civil practice of the jurisdiction for seizing such a chose in action." *Id.* at 175–76. A commonly utilized remedy is for an injured third person to collect such judgment by instituting garnishment proceedings against the liability insurer. *Id.* at 178.

■■■ In the present case, Penford chose the statutory remedy of garnishment. It alleged that an asset belonging to CJS was in the possession of Lexington, which Lexington denied. Where there is a dispute between the garnishor and garnishee, a trial is to be held. Iowa Code

§ 642.11; *see also Rohlf v. Struckmeyer*, 237 Iowa 1008, 1014, 24 N.W.2d 1, 4 (1946) (explaining the issues to be tried are established by the judgment creditor's pleadings and the garnishee's answer). The burden is on the judgment creditor to establish that the debt is owed by the garnishee to the principal-defendant. *Rohlf*, 237 Iowa at 1014, 24 N.W.2d at 4. Therefore, the issue in the underlying proceedings was whether Lexington was indebted to CJS.

On appeal, Lexington asserts that rather than holding a trial on the issue of whether Lexington was indebted to CJS, the district court should have compelled arbitration to determine whether the underlying defective-design claim was covered under the liability insurance policy between CJS and Lexington. Lexington argues the garnishor (Penford) is bound by an arbitration clause in a contract between the judgment-debtor (CJS) and the garnishee (Lexington).[2] "[A]rbitration is a matter of contract and parties cannot be compelled to arbitrate a question which they have not agreed to arbitrate." *Bullis*, 553 N.W.2d at 601–02 (citations omitted). Penford is not suing on the liability policy but rather attempting to collect an asset of the judgment-debtor, and there need not be a relationship between Penford and Lexington to utilize garnishment proceedings. The parties do not dispute that there was no agreement between Penford and Lexington to arbitrate.

Lexington asserts that "garnishors 'stand in the shoes' of their judgment debtors." "Generally speaking the right of the garnishing creditor is dependent upon the right of the debtor to the fund." *Hopping v. Hopping*, 233 Iowa 993, 1006, 10 N.W.2d 87, 94 (1943). Nevertheless, Lexington's argument is somewhat complicated by the procedural nature of this case—the fact that Lexington failed to defend CJS and did not previously litigate whether the policy provided coverage for Penford's defective design claims. Lexington essentially argues that the "stand in the shoes" rationale should be extended to arbitration clauses that the principal defendant had previously agreed to. We disagree. "Garnishment statutes are remedial in their nature, and it has been the tendency of the courts to construe them broadly and liberally to effect their purpose." *Id.* at 1006, 10 N.W.2d at 94. When initiating garnishment proceedings, the judgment-creditor is seeking to satisfy a judgment against the principal-defendant by obtaining the principal-defendant's property in the garnishee's possession. Consequently, the only relevant issue is whether the garnishee is indebted to the principal-defendant. While the garnishor "stands in the shoes" of the judgment debtors, this is in the context of the issue presented in the garnishment proceedings. It does not extend to the arbitration clause in the agreement between CJS and Lexington. Further, the garnishment statute provides that this issue shall be decided by trial. Iowa Code § 642.11. Where the parties have no agreement otherwise, we find that the parties cannot be compelled to arbitrate the garnishment claim. Therefore, we affirm.

**AFFIRMED.**

---

2. Penford states it "does not agree that Lexington adequately preserved error." Yet it does not make any other arguments or statements in support of this assertion. This is insufficient to raise the issue for our review. *See State v. Mann*, 602 N.W.2d 785, 788 n. 1 (Iowa 1999) (citing *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 689 (Iowa 1994) (holding that random mention of an issue, without elaboration or supporting authority, is insufficient to raise issue for appellate court's consideration)).