John A. McGEE and Erma McGee, Appellees,

v.

Donald DAMSTRA, Appellant.

Donald DAMSTRA, Plaintiff,

v.

IOWA DISTRICT COURT, Defendant.

Nos. 87–667, 88–513.

Supreme Court of Iowa.

Nov. 23, 1988.

Thomas J. Whorley and Timothy A. Scherle of Wolff, Whorley, De Hoogh & Thompson, Sheldon, for appellant and plaintiff on certiorari.

Marvin V. Colton, Albia, for appellees and defendant on certiorari.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

These consolidated proceedings involve an appeal from a decree of specific performance entered against the defendant buyer in a land contract action, and an original certiorari action challenging an order finding the buyer in contempt under the decree. The court of appeals reversed the district court's decree of specific performance and held that forfeiture was the sole remedy available to the sellers under the agreement. It found that the contempt issue was moot and made no further adjudication on that issue. We granted further review on both the appeal and the certiorari. On the appeal we affirm the decision of the court of appeals and reverse the district court's decree. In the certiorari action, we vacate the judgment of the court of appeals and sustain the writ.

## I. *Facts and Proceedings Below.*

In 1981, the plaintiffs, John and Erma McGee, entered into an installment land sale contract with defendant, Donald Damstra, for the sale of sixty-five acres of farmland. The contract price was $130,-000, with a $38,000 down payment, and yearly payments of $2500, plus 9% interest per annum, until January 1, 1991, when the remaining unpaid balance became due. The agreement was executed on the standard Iowa Bar Association Form 21.2.

At issue in this case is the legal effect of certain handwritten changes made to paragraph 10 of the standard form. The contested provision, as altered, reads as follows as a result of inserting the italicized word *"not"* in the following clause and deleting certain language:

10. **Forfeiture and Foreclosure.** If Buyers fail to perform this agreement in any respect, time being made the essence of this agreement, then Sellers may forfeit this contract as provided by Chapter 656 of the Iowa Code and all payments made and improvements made on said premises shall be forfeited. Sellers may *not* declare the full balance owing due and payable and proceed by suit at law or in equity to foreclose this contract ~~in which event Buyers agree to pay costs and attorney fees and other expense incurred by Sellers. It is agreed that the periods of redemption after sale on foreclosure may be reduced under the conditions set forth in Sections 628.26 and 628.27, Code of Iowa.~~

(Emphasis added.)

Following execution of the agreement, Damstra made the down payment, took possession of the property, and leased the land to a third party. He made all annual payments up to and including the January 1, 1985, payment. However, Damstra thereafter failed to pay real estate taxes due on October 1, 1985, and defaulted on the January 1, 1986, annual payment.

On April 8, 1986, the McGees filed a petition seeking specific performance of the contract. At the trial the district court admitted extrinsic evidence offered by Damstra to establish that the parties had

an understanding that paragraph 10 would limit the McGees to the remedy of forfeiture in the event of Damstra's default. Notwithstanding this testimony, the district court found (1) there was no such understanding on the part of the McGees, and (2) the language standing alone did not operate to exclude specific performance as a remedy. Although the court recognized that as a result of the express negative language in the agreement it could not order acceleration of the unpaid balance upon the buyer's default, it ordered the buyer to specifically perform each contract installment as it became due.

On appeal, the court of appeals reversed, finding that the McGees should have known that paragraph 10 limited the available remedies to forfeiture of the agreement. In this proceeding for further review, the McGees argue (1) extrinsic evidence regarding the intent of the parties should not have been considered by the district court or the court of appeals, and (2) that, in any event, the district court's interpretation of the intention of the parties was correct based on all of the evidence and should not be disturbed. Appellate review of an action in equity, such as one for specific performance of a written contract, is de novo. *Decker v. Juzwik*, 255 Iowa 358, 367, 121 N.W.2d 652, 657 (1963).

## II. *Admission of Extrinsic Evidence.*

■ The McGees contend the court of appeals erroneously upheld the admission of extrinsic evidence offered by Damstra to show the McGees understood paragraph 10 would limit their remedies to forfeiture. The McGees argue the contract, even if "inartfully drawn," was not ambiguous on its face, and therefore the parties' intentions must be determined solely from the language of the contract itself.

This argument fails, we believe, to note the distinction maintained in our cases between the interpretation of the meaning of words used in an agreement and the overall understanding of the parties within the context of the transaction. As we recently observed in *Wohlenhaus v. Pottawattamie Mutual Insurance Association,* 407 N.W.2d 572, 575 (Iowa 1987):

Although plaintiff's claim is, in part, based on an interpretation of the language of the policy, it is primarily grounded on the understanding of the parties within the context of the transaction. In *First National Bank of Creston v. Creston Implement Co.*, 340 N.W.2d 777, 781 (Iowa 1983), we discussed the principles of interpretation espoused in the Reporter's Note to comment a and comment b of Restatement (Second) of Contracts § 212 (1979). The Reporter's note to comment a states:

Cases making a bald "objective-subjective" distinction often refuse to go further unless ambiguity is facially apparent.... This approach is deemed simplistic, for reason stated in this Comment and Comment b.

Comment a recognizes that in cases involving misunderstanding as to the meaning of an agreement "there may be a contract in accordance with the meaning of one party if the other knows or has reason to know of the misunderstanding and the first party does not." We recognized this principle in *Hamilton v. Wosepka*, 261 Iowa 299, 306–07, 154 N.W.2d 164, 168 (1967). Comment b of the Restatement suggests that the operative meaning of the contract is to be found in the nature of the transaction and within its context.

In considering Damstra's arguments on appeal, we believe the issue presented requires us to examine the overall understanding of the parties within the context of the transaction. Consequently, we believe that all extrinsic evidence which sheds light on the situation, the relationship of the parties, the subject matter of the transaction, preliminary negotiations, and statements made therein, may be freely considered in arriving at the true intention of the parties.

## III. *Interpretation of the Disputed Clause Based on Extrinsic Evidence.*

■ The standard form contract at issue was prepared by John D. TePaske, who

at that time was an attorney as well as part owner of Farmland Realty, the broker which handled the sale. At trial Damstra offered the testimony of TePaske, as well as his own, to show the meaning of the changes made to paragraph 10. Damstra testified he signed the contract in the presence of TePaske and Larry Church, another broker for Farmland Realty. The McGees were not present, according to his testimony, and in fact, he did not meet them until several years after the contract was executed.

Damstra testified a brief discussion took place with TePaske and Church at the time he signed the contract, but he could not recall whether they went through the clauses of the contract together. He testified he could not recall discussing paragraph 10 at this time, but then stated, "I'm sure it was discussed." In subsequent questioning Damstra testified someone explained to him at this time that the changes to paragraph 10 meant he could not be forced to perform or continue the contract if he chose not to continue, and that his only liability would be to lose the payments made up to that point. At one point in his direct testimony the following exchange occurred:

Q. Did you request the change in the language in paragraph 10 or was that alteration made before you signed the contract? A. To the best of my knowledge, that alteration was in there before I signed the contract.

This answer seems to indicate that the changes were not made as the result of negotiations between the parties.

TePaske testified that Farmland Realty had a practice of altering paragraph 10 of the standard bar association form with the intention of precluding the vendors' use of foreclosure. TePaske stated the changes were "one of the central selling points we used with regard to buying southern Iowa farmland." The court of appeals believed the changes were a selling point in the McGee–Damstra contract. This conclusion may have been deduced from TePaske's general statement that the changes were

an incentive for Damstra to sign the agreement.

With regard to the McGees' understanding of the disputed clause, TePaske testified that he reviewed the contract with them on the date they signed it and specifically discussed that paragraph. He testified that he told them the changes were made so that "if the buyer for some reason did not want to continu[e] buying this land, that the only remedy available to ... the McGees was that they could keep all the money that had been paid to them up to that point, and they would get clear title to the land back." The McGees did not recall receiving this explanation from the broker.

John McGee testified he could recall discussing contract payments but could not recall any explanation about the changes made to paragraph 10 or its legal effect. He testified that he did not read that paragraph of the agreement and first became aware of the altered language after Damstra's default.

The district court found from all of the testimony that neither the buyer nor the sellers had a clear understanding of the legal effect of paragraph 10 of the agreement. It was the court's view that notwithstanding this circumstance the sellers were possessed of all of the common-law remedies ordinarily available against a defaulting buyer which were not expressly negated by the language of the disputed clause. From this premise, the court reasoned that, although foreclosure was expressly excluded by the contract language and acceleration of the unpaid principal balance was similarly excluded, there was nothing in the wording which precluded the sellers from seeking specific performance of their right to receive each installment payment as it became due or the balloon payment to become due on January 1, 1991.

The court of appeals rejected the district court's reasoning on the ground that it led to a result which was not within the contemplation of either the buyer or the sellers. It found that the agreement should be enforced in accordance with what it believed to be a standard of reasonableness, based on all of the surrounding circum-

stances. In challenging this result, the McGees urge that it is not reasonable to assume, in the absence of some express indication on their part, that they were relinquishing any common-law vendors' remedies which were not expressly excluded by the contract language.

In deciding the issues presented, we begin with some preliminary conclusions. We have said that interpretation of a contract "cannot involve giving it a meaning that none of the parties in fact gave it." *Home Fed. Sav. & Loan Ass'n v. Campney,* 357 N.W.2d 613, 617 (Iowa 1984). Nevertheless, unless the purported agreement remains entirely executory, the reliance factors which the purported agreement has induced require a court to divine some fair solution of the parties' misunderstandings. One writer has illustrated the problem as follows:

> Perhaps the contract is embodied in a printed form that neither party prepared; perhaps its clauses have been lifted from a form book; perhaps the deal is a routine one struck by minor functionaries.... The court will then have no choice but to look solely to a standard of reasonableness. Interpretation cannot turn on meanings that the parties attached if they attached none, but must turn on the meaning that reasonable persons in the positions of the parties would have attached if they had given the matter thought.

E. Farnsworth, *Contracts* § 7.9, at 491 (1982) (citing *Southern Bell Tel. & Tel. Co. v. Florida E. Coast Ry.,* 399 F.2d 854 (5th Cir.1968)). A similar description of the problem is found in *Wolfe v. Graether,* 389 N.W.2d 643 (Iowa 1986):

> Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. In such a case, there is a contract in accordance with that understanding.

*Id.* at 653–54 (quoting 3A A. Corbin, *Contracts* § 684, at 224 (1960)). Yet another illustration of this principle is found in Iowa Code section 622.22 (1985), which provides:

> When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which a party had reason to suppose the other understood it.

We believe that the application of these principles to the present dispute requires that we uphold the decision of the court of appeals and reject that of the district court. Although we agree with the district court's conclusion that the McGees, more likely than not, had no firm understanding of the legal import of the disputed clause in the contract, the same is not true of Damstra. We are convinced from the evidence that it was his firm belief that he was not obligating himself for any unpaid sums under the agreement.

In applying the rule of interpretation contained in section 622.22, we must consider whether the McGees "had reason to suppose" the interpretation which Damstra was placing on the agreement. Under a purely subjective standard, a strong case can be made that they did not. We conclude, however, that an objective standard must be applied. The altering of the standard contract clause so as to limit the sellers' remedies is, we believe, a circumstance of which they are bound to take note. The message which such an alteration conveys is that the buyer is to receive some discernible benefit from the change made to the standardized form. Viewed in this light, we do not believe that it would have been reasonable for the McGees to assume that the effect of excluding foreclosure as a remedy was only to preclude a sale on special execution to satisfy an ensuing judgment for the contract price. That interpretation would leave the buyer nearly as financially vulnerable as if no change had been made in the standard clause. Nor would that interpretation present a satisfactory arrangement for a seller who is looking to the buyer for full satisfaction of the debt. Consequently, we conclude, as

**380**

did the court of appeals, that under the circumstances the McGees should bear the burden of the misunderstanding.

### IV. *The Certiorari Action.*

 In the original certiorari action, which has been consolidated with this appeal, Damstra challenges a district court order finding him in contempt for failure to make installment payments under the trial court's decree of specific performance and imposing a jail sentence. The court of appeals believed that the contempt issue was mooted as a result of its decision invalidating the decree in the specific performance action. We cannot agree with that conclusion. The record entry of the contempt finding and jail sentence remains in the district court and must be dealt with on the merits.

Damstra's challenge to the contempt finding and resulting jail sentence presents substantial issues concerning whether the contempt judgment constitutes an improper imprisonment for debt in violation of article I, section 19 of the Iowa Constitution, or is an invalid use of the contempt power under the limitations contained in Iowa Code section 626.1 (1985). However, we do not reach these issues.

The record reflects that in appealing the decree of specific performance Damstra was earnestly attempting to stay its execution by means of posting a supersedeas bond. He was eventually successful in accomplishing that result. The district court's finding of a willful violation of the decree related to the period of time before a stay had been obtained.

For purposes of a finding of contempt, we have said that willful disobedience of a court order requires evidence of conduct that is "intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty...." *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980). Because we find that Damstra, at all times relevant to the issue of willful violation, intended to obtain a lawful stay of the execution of the decree, we conclude that his disregard of

its requirements was not sufficiently willful to sustain a finding of contempt.

For the reasons discussed, we affirm the decision of the court of appeals and reverse the decree of the district court in the specific performance action. We vacate the decision of the court of appeals and sustain the writ of certiorari with respect to the contempt issue.

(ON APPEAL) DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED; (ON CERTIORARI) DECISION OF COURT OF APPEALS VACATED; WRIT SUSTAINED.