WELLMAN SAVINGS BANK, Appellee,

v.

Verna ADAMS, Appellant.

No. 89–174.

Supreme Court of Iowa.

April 18, 1990.

As Corrected April 23, 1990.

Rehearing Denied May 23, 1990.

William L. Meardon of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellant.

William S. Vernon of Moyer & Bergman, Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

In early 1983 David Dumont sought a loan in the amount of $25,000 from the Wellman Savings Bank to make alterations in his farming operation. The bank determined that Dumont lacked adequate security and declined to make the loan unless he could find a guarantor. He talked to his mother, Verna Adams, about acting as guarantor, and after some initial hesitation she acquiesced.

Dumont and Adams met with loan officers at the bank on June 3, 1983. After completing a financial statement, Adams signed the guaranty instrument presented by the bank. The instrument stated in relevant part: ·

For and in consideration of the sum of One Dollar and other good and valuable consideration, to me in hand paid by Wellman Savings Bank[,] Wellman, Iowa[,] the receipt whereof I hereby acknowledge, I hereby guarantee to said Bank, its successor, successors, or assigns, payment at maturity of the bills, notes, checks, drafts, or other evidence of debt, not exceeding the sum of $25,000.00, either made or endorsed by David Dumont, *already discounted or which may be discounted by said Bank* for the said David Dumont together with all legal or other expenses of or for collection; demand of payment and notice of protest waived.

And I hereby declare this guaranty of the payment of such bills, notes, checks, drafts, or other evidences of debt, up to said sum of $25,000.00, either made or endorsed by said David Dumont, until revoked by me in writing and a copy of such revocation delivered to said Bank, *and until all obligations existing at the time of such revocation are paid in full.* (Emphasis added).

Relying upon the guaranty signed by Adams, the bank loaned Dumont the requested sum. Dumont continued to borrow money from the bank from time to time, and in September 1984 the bank sent Adams a letter itemizing the outstanding balance owed by Dumont. At that time, the bank requested a second financial statement from Adams. After speaking with Dumont, who advised her to go ahead, Adams executed the financial statement and sent it back to the bank.

## I. *The Facts.*

Dumont subsequently defaulted on two notes, one executed in February 1984 and a second note executed in June 1984. Neither note involved the initial loan of $25,000 which led to Adams' guaranty. The bank filed a petition in district court seeking payment from Adams in the amount of the $25,000 guaranty.

Adams answered, advancing two arguments. Adams' first argument centers upon the language in the guaranty agreement that relates to discounted notes. She contends that since none of the notes executed by Dumont were in fact discounted notes, she is under no obligation as guarantor.

Her second argument was that neither she nor the bank intended that her guaranty should apply to any note executed by Dumont other than the June 1983 loan. She contended initially that the last clause of the guaranty agreement, which read "... and until all obligations existing at the time of such revocation are paid in full," was inserted in the agreement by the bank sometime after she signed the instrument. Subsequently, however, she admitted that the language was in the agreement when she executed it. She nevertheless contends that the language of the guaranty instrument is ambiguous, and concludes that she should have been allowed to present parol evidence at trial to show her interpretation of the language.

The bank amended its original petition, asking the district court to reform the guaranty instrument on the basis of mutual mistake, deleting the reference to discounted notes. In a bifurcated trial, the district court reformed the guaranty by deleting the language referring to discounted notes. In the second stage of its hearings on the matter, the court found Adams liable for the $25,000 guaranty, after first prohibiting the introduction of parol evidence on the issue of the parties' intent.

The court of appeals reversed, finding that the parties did not intend the guaranty to apply to debts incurred by Dumont other than the June 1983 loan. As a result, the court of appeals held that the language relating to discounted notes should not have been deleted from the contract. The case comes to this court on further review from the court of appeals.

As the court of appeals correctly noted, the bifurcated nature of the proceedings requires that we apply separate standards of review to the separate stages of the proceedings. The initial action to reform the contract is an equitable action and our scope of review is consequently de novo. *First Nat'l Bank in Sioux City v. Curran*, 206 N.W.2d 317, 320 (Iowa 1973). The second part of the proceedings, which awarded judgment on the guaranty, was an action at law and consequently our review is for the correction of errors of law. *Berry Seed Co. v. Hutchings*, 247 Iowa 417, 422, 74 N.W.2d 233, 237 (1956).

## II. *The Reformation.*

In reviewing the trial court's determination that the language referring to discounted notes should be deleted from the guaranty instrument, we review the whole record, adjudicating anew the parties' rights on the issue presented. We give weight to the trial court's findings of fact, but are not bound by them. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981).

The bank has the burden of proving by clear, satisfactory, and convincing evidence that the contract does not reflect the true intent of the parties, either because of fraud or duress, mutual mistake of fact, mistake of law, or mistake of one party and fraud or inequitable conduct on the part of the other. *See Kendall v. Lowther*, 356 N.W.2d 181, 187 (Iowa 1984). The remedy of reformation of an instrument lies within the sound discretion of the equity court and depends on whether the remedy is essential to the ends of justice. *Id.* at 188. In reforming the instrument, the court does not change the agreement between the parties, but changes the drafted instrument to conform to the real agreement. *Baldwin v. Equitable Life Assurance Soc'y of United States*, 252 Iowa 639, 643, 108 N.W.2d 66, 68–69 (1961).

In reviewing the facts, then, we seek to determine whether the insertion of the terms relating to discounted notes was the result of a mutual mistake on the part of both parties, as the bank contends. We note at the outset that except for the typed names of the parties, the amount of the guarantee, and the last typewritten clause, the instrument is a standard form document. At the very least, the evidence shows that Adams intended to guarantee the $25,000 loan Dumont took out in June of 1983, and Adams admits as much.

Furthermore, the parties agree that there was no discussion regarding whether or not the guaranty agreement applied solely to notes discounted by the bank. At hearing, Adams admitted that she did not know that a special legal significance attached to the term "discounted note," and believed that the terms of the guaranty applied to the $25,000 loan that Dumont was negotiating.

For its part, the bank asked for the guaranty because it was unwilling to loan Dumont the money without that protection. It subsequently relied upon Adams' guaranty in making additional loans to Dumont, and kept her informed of Dumont's indebtedness to the bank. It asked for and secured from Adams a second financial statement. Finally, and perhaps most tellingly, none of the notes executed by Dumont to the bank was a discounted note. Adams' argument leads inexorably to the conclusion that the guaranty instrument did not even guarantee the June 1983 note that prompted the bank to ask Dumont to secure a guarantor. Consequently, Adams' argument is that the bank's request of Dumont to secure a guarantor was meaningless and the guaranty worthless from its inception.

We conclude that it was not the intent of the parties that the guaranty instrument apply only to discounted notes, and that the language relating to discounted notes was a mutual mistake.

## III. *The Judgment.*

Adams also contends that judgment against her on the guaranty was improper because it was the intent of the parties that only the June 1983 loan would be secured by her guaranty. She sought to introduce extrinsic evidence in support of her position

when the district court undertook its hearing on the merits of the bank's demand for judgment. Prior to hearing, however, the bank made a motion in limine seeking to exclude extrinsic evidence, asserting that there was no ambiguity in the contract as it had been reformed in the first stage of the proceedings. The district court granted the motion, and Adams appeals.

■ This court has held that extrinsic evidence may be admissible to show what is meant by the words chosen by the parties to express their agreement. *See, e.g., McGee v. Damstra,* 431 N.W.2d 375, 377 (Iowa 1988). Adams argues that this principle is controlling, and as a consequence the bank's motion in limine should have been denied. She contends the evidence should have been allowed as a means to show how she understood the guaranty instrument. *See id.*

Adams testified at hearing on the bank's motion in limine that she had not read the instrument very closely when she signed it. She admitted on cross-examination that her understanding of the agreement when she did read it carefully was that it imposed a continuing obligation up to $25,000. She testified that this was not what she intended when she signed the guaranty instrument.

Adams had a clear opportunity to negotiate the terms of the guaranty with the bank officers in June 1983. Had she read the terms the bank offered more carefully, she may have been able to get terms that more closely approximated what she said she intended at hearing. It is clear to the court that Adams' request to present extrinsic evidence of her intent at the time the contract was signed is a request to have the contract rewritten to reflect that intent. This court has stated that extrinsic evidence offered to vary, add to, or subtract from a written agreement is inadmissible. *Kroblin v. R.D.R. Motels, Inc.,* 347 N.W:2d 430, 433 (Iowa 1984).

The guaranty executed by Adams is unambiguous. It is a continuing guarantee of Dumont's debts up to $25,000. *But cf. Union Trust & Savs. Bank v. State Bank,* 170 N.W.2d 674, 677–78 (Iowa 1969) (guar-

antor not liable on nondiscounted notes where guaranty referred to discounted notes and language not reformed by court). As a consequence, extrinsic evidence was properly excluded by the trial court.

For the same reason, Iowa Code section 622.22 (1987) is inapplicable. That section allows the use of extrinsic evidence to prove the intent of the parties to a contract only where the contract terms are ambiguous. *M–Z Enterprises v. Hawkeye–Security Ins. Co.,* 318 N.W.2d 408, 413 (Iowa 1982).

■ Adams also advances the doctrine of reasonable expectations in support of her contentions. The concept was stated by this court in *Rodman v. State Farm Mutual Insurance Co.,* 208 N.W.2d 903 (Iowa 1973).

> The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Id.* at 906 (quoting Keeton, *Insurance Law: Basic Text* § 6.3(a) at 351 (1971)).

We assume, without deciding, that the reasonable expectations doctrine is applicable to the guaranty executed by Adams. Adams argues that under the doctrine, she should have been allowed to present extrinsic evidence that she would not have accepted a continuing guaranty agreement.

The court confronted a similar situation in the *Rodman* case itself. There, Rodman sued an insurance company to recover damages he sustained in an accident. The company declined to pay on the policy it had issued Rodman on his car when he was injured in an accident in which another individual was the driver of Rodman's car. The company asserted that its policy did not provide coverage. *Id.* at 904–05.

This court found that the trial court correctly refused to extend the principle of reasonable expectations to impose liability. We noted that Rodman did not contend that he misunderstood the policy, but that he had not read it. In retrospect, he asserted that if he had read it he would not have

understood it. He did not say he was misled by conduct or representations of the insurer. Rodman's assertion was that if he had read the policy, he would have purchased a different policy that covered the situation in which he was involved. *Id.* at 906–07. This court refused to rewrite the policy. *Id.* at 906.

In this case, Adams did not contend at hearing on the motion to suppress that she misunderstood the guaranty. In fact, she admitted that upon reading it, she understood it to be a continuing guaranty. She admits that she only gave the document a cursory glance before signing it. The thrust of her argument is that if she had read the unambiguous terms before signing, she would not have signed. In these circumstances, the rational of the *Rodman* case is persuasive that the doctrine of reasonable expectations is inapplicable. The trial court did not err in excluding extrinsic evidence as to Adams' undisclosed intent.

We have considered the parties' arguments regarding the equities of the situation. Adams contends that the bank was allowed to present extrinsic evidence on the issue of language related to discounted notes at the reformation hearing and fundamental fairness dictates that she should be able to present extrinsic evidence of intent in connection with the legal portion of the hearing. This argument ignores the fact that Adams had ample opportunity to present extrinsic evidence of her intent during the reformation portion of the hearing. In fact, she argued at that time that the last clause in the guaranty instrument, reading, "[A]nd until all obligations existing at the time of such revocation are paid in full," should be deleted from the document. She based her argument on the assertion that this clause was added by the bank after she signed the instrument. The trial court found no merit in the contention, and we agree. Adams admitted at a subsequent hearing on the bank's motion in limine that the clause was in the document at the time she signed.

On balance, we conclude that the equities favor the bank. Adams returned the second financial statement to the bank even though she suspected the bank believed her guaranty of Dumont's debt was continuing. She did not protest at that time, and the bank relied on the guaranty to continue extending credit to Dumont. Accordingly, the decision of the court of appeals is vacated and the judgment of the district court affirmed.

Each party shall pay its own attorneys fees on the appeal. Costs are assessed to appellant.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.