**IN THE COURT OF APPEALS OF IOWA**

No. 14-0309
Filed June 10, 2015


FIRST AMERICAN BANK and C.J.
LAND, L.L.C.,
　　　　Plaintiffs-Appellees,

vs.

FOBIAN FARMS, INC., HOOVER
HIGHWAY BUSINESS PARK, INC.,
and GATEWAY, LTD.,
　　　　Defendants-Appellants.
_____

　　　　Appeal from the Iowa District Court for Johnson County, Ian K. Thornhill,

Judge.


　　　　The defendants appeal from the district court's ruling in action to quiet title.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**



　　　　Gregg Geerdes, Iowa City, for appellants.

　　　　Mark A. Roberts, Lynn W. Hartman, and Dawn M. Gibson of Simmons

Perrine Moyer Bergman PLC, Cedar Rapids, for appellees.


　　　　Heard by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

To be or not 2B, that is the question.[1]  This appeal involves the issues of whether a deed to unit 2B should be reformed to legally describe unit 2A, and if a sheriff's deed and related instruments reciting unit 2A should be reformed to identify unit 2B.

Fobian Farms, Inc., Hoover Highway Business Park, Inc., and Gateway Ltd. appeal from the district court's ruling in an action to quiet title, initiated by C.J. Land, L.L.C. and First American Bank (hereinafter collectively referred to as the plaintiffs).[2]  Fobian Farms[3] maintains the district court's ruling to quiet title to the restaurant site and reform the corresponding legal documents was not equitable.  Fobian Farms also maintains the district court abused its discretion in assessing sanctions against Fobian Farms for violating the rule governing certification of motions, pleadings, or other papers.

Because we find there was a mutual mistake made in the expression of the deed and reformation is an appropriate remedy, we affirm the district court's ruling to reform the corresponding legal documents.  We modify the district court's ruling to grant an easement for the 1.3 foot strip for so long as the current restaurant building exists rather than what appears to be a forced sale of the strip.  We find the district court did not abuse its discretion in assessing

---

[1] "To be or not to be" originates in William Shakespeare's *The Tragedy of Hamlet Prince of Denmark* 156 (Sylvan Barnet, 2006).

[2] Carl Fobian is owner and shareholder of Hoover Highway Business Park, Inc.  He is also the president and CEO of Fobian Farms.  Fobian Farms deeded its interest in the property in question to Hoover Highway Business Park.
    At the time of the trial, Carl Fobian had acquired Gateway Ltd. from Jerry Eyman, but Eyman was the president of Gateway during all of the conveyances in question.

[3] We refer the group of defendants/appellants as Fobian Farms throughout.  We refer to Carl Fobian as Fobian.

sanctions. However, because the court failed to make the necessary findings to determine if the amount of the award is appropriate, we remand to the district court to make the required specific findings and reconsider the amount of sanctions awarded.

**I. Background Facts and Proceedings.**

This case involves a real estate dispute over units 2A and 2B within a horizontal property regime—a type of cooperative association.

In a horizontal property regime, there is only one lot. The lot is then further subdivided into "buildings." Buildings may be divided into multiple units. An outside party purchases or leases a unit from the association.[4]

Jerry L. Eyman was the president of the developer, Gateway Ltd. Eyman and Gatway Ltd. established the horizontal property regime in question. In the original 1999 plat of the regime, the two units in dispute—and building 2—were oriented in an east-west configuration. Unit 2A was placed to the west of unit 2B.



Building 2: 1999 Plat

The 1999 plat was amended in 2007, which reoriented building 2 to a north-south configuration, with unit 2A south of unit 2B.

---

[4] The horizontal property regime is governed by Iowa Code chapter 499B (1999).



Building 2: 2007 Plat

In the 2007 plat, all north-south buildings were aligned alphabetically from north to south except building 2.

Sometime before 2007, Carl Fobian, president of Fobian Farms, loaned Eyman and Gateway Ltd. money. To secure his interest, Fobian received the second mortgage on the unsold buildings of the property regime—including Building 2. Fobian recorded the mortgage on May 16, 2007. Hills Bank and Trust held a first mortgage upon the property.

Joe Burnett, president of C.J. Land, met Eyman in 2007 and discussed the possibility of purchasing a unit in the development to build a restaurant.

In June 2008, Eyman asked Fobian to sign a partial release so C.J. Land could buy a unit. On June 17, 2008, Fobian signed the partial release, releasing unit 2B from the second mortgage. The release referenced the 1999 plat, not the 2007 plat. At the time he signed the release, Fobian was aware that C.J. Land intended to purchase the lot to build a restaurant.

On June 30, 2008, C.J. Land recorded a warranty deed from Gateway Ltd. Although C.J. Land negotiated with Gateway Ltd. for the southern lot for more

exposure to a nearby highway, the deed stated it was for unit 2B and referenced the legal description from the 1999 plat. C.J. Land then hired Eyman as general contractor and built a restaurant on the south unit of building 2.

Although the unit was 75 feet by 60 feet in size,[5] the restaurant was built one foot longer than the size of the unit. Additionally, a large meat smoker and air conditioner units were placed outside the footprint of the unit. The restaurant cost approximately $1.1 million to construct and was substantially complete by July 31, 2009.

Gateway Ltd. ultimately defaulted on the mortgages secured by the unsold units in the horizontal property regime, and the bank began a foreclosure action. Fobian Farms, holding a junior mortgage on the property, was named as a defendant in the action. Fobian then purchased the bank's interest and, stepping into the position previously held by the bank, continued the foreclosure action. Using a credit bid, Fobian purchased the sheriff's deed to the unsold property in the development on July 6, 2010, including unit 2A. Like the previous legal

---

[5] Both units 2A and 2B were 75 feet by 60 feet in size.

documents, the sheriff's deed references the 1999 Declaration recorded in Book 2672, Page 212 in Johnson County, Iowa, without reference to the 2007 plat.

On July 30, 2010, the licensed land surveyors who had prepared and filed the 2007 plat filed an affidavit, stating, "[S]crivener's errors have been detected on the plat and in accordance with the provisions of Chapter 354.24, Code of Iowa, the following corrections should be substituted: the north unit of building 2 should be 2A not 2B; the south unit of building 2 should be 2B not 2A."

About one year late—on June 29, 2011—Fobian Farms filed a lawsuit against the land surveyors for filing the affidavit. The petition alleged that "[t]he conduct of the defendants in this action constitutes a disparagement or slander of the title of plaintiff" and asked the court "for judgment against defendants in an amount sufficient to compensate it for the damages sustained."

On September 2, 2011, the land surveyors filed an "explanatory and corrective surveyors' affidavit." The purpose of the affidavit was to "withdraw, negate, and void the [original] Affidavit . . . and return the Unit numbering to the state in which it existed prior to execution and recording of that Affidavit." The lawsuit was subsequently dismissed against the surveyors.

On March 7, 2012, the plaintiffs filed a petition to quiet title and reform mortgage and deeds. The plaintiffs asked the district court to quiet title to the property on which they had built the restaurant.

On May 3, 2012, Fobian filed an answer as well as a counterclaim that alleged C.J. Land had interfered with a prospective business advantage by building upon land it did not own. Fobian also asserted a third-party cross claim

against Eyman for negligent misrepresentation and a similar claim against the third party Hills Bank & Trust.

C.J. Land and the bank resisted Fobian's counterclaims and third-party claims. They also filed motions of summary judgment and a motion for sanctions against the defendants.

On January 24, 2013, the district court ruled on the motion for summary judgment, granting both C.J. Land's and the bank's motions for summary judgment and dismissing Fobian's counterclaims and third-party claims. The court ordered that the plaintiff's motion for sanctions would be considered by the trial judge at the time of trial.

The matter proceeded to a bench trial March 5–7, 2013.

At trial, Eyman testified that part of the reason for amending the orientation of Building 2 in 2007 was because C.J. Land had approached him about purchasing land in the development and wanted a site next to the highway for visibility purposes. He testified that he intended to sell the south unit of Building 2 to C.J. Land and believed he had done so because he did not realize the amended plot had incorrectly labeled unit 2B north of unit 2A. Eyman testified he first learned of the scrivener's error when Fobian told him in late July 2010. Eyman then immediately asked the surveyors to fix the mistake, and as a result, they filed the July 30, 2010 affidavit. Eyman also testified that Fobian's attorney approached him in June 2011 with handwritten notes from Fobian, which included a strategy of how Fobian planned to obtain the building on the restaurant site. Through his attorney, Fobian indicated he would forgive a large portion of Eyman's debt if he went along with the strategy, but Eyman refused.

Burnett also testified at trial. As president of C.J. Land, he explained he intended to purchase the south unit in Building 2 and he had "no doubt" he had done so when he purchased unit 2B. Burnett first met Fobian after the sheriff's sale. C.J. Land previously had an agreement with Eyman to use one of the unpurchased lots for overflow parking and in exchange, C.J. Land maintained the lot and carried insurance on it. Burnett contacted Fobian within a few days of the sheriff's sale to see if the agreement could be continued. Fobian agreed, and his attorney drew up a contract to memorialize the agreement. They signed the lease agreement on July 20, 2010. Burnett testified that Fobian did not make any claims to owning the restaurant at that time. On July 27, 2010, Fobian's attorney sent C.J. Land's attorney a letter stating that Fobian owned lot 2A, which was the south lot on which the restaurant was built. According to Burnett, this is the first he learned of the dispute.

Fobian's attorney, Joseph Keele, testified as well. He testified he and Fobian discovered that C.J. Land had built on the wrong lot as they were preparing to go forward with the sheriff's sale and purchase the mortgages from the bank. He testified that even though he knew there was a building on the lot, he did not go inspect the building. He only knew that the auditor's website indicated there was a building on the property. Also, even though he knew it was a possibility someone else had an ownership interest in the piece of property, neither he nor Fobian were concerned by that.

Fobian testified Eyman had taken him to the development before he signed the release in order for C.J. Land to buy the unit. He claimed Eyman told him he needed him to release 2B, the north end of Building 2, so C.J. Land could

build a restaurant. He maintains Eyman told him that C.J. Land wanted the north unit to build the restaurant and then intended to eventually buy the south unit as well in order to construct a beer tent or patio area. Fobian testified that he saw C.J. Land building the restaurant on the wrong unit, but he said nothing because, "It was not [his] business. If they wanted to improve [his] equity, that was none of [his] business." He maintained that he would not have purchased the mortgages from the bank if the restaurant was not included.

Fobian agreed that the first time he met Burnett was when they discussed the lease for the overflow parking, but Fobian testified he told Burnett, "[W]e now own the bar and will be wanting some lease payments from it," at that time. He admits he never received any lease payments from C.J. Land. Fobian also testified regarding his handwritten notes setting out his strategy that had been previously admitted. Fobian agreed he wrote them but testified that he did not give them to his attorney and, in fact, was unsure how his attorney got them. Fobian testified he never meant for his attorney to give them to Eyman because he wrote them for his "personal use."

On rebuttal, Eyman testified he had never shown Fobian where C.J. Land intended to construct the restaurant. Eyman also disputed he had told Fobian that C.J. Land intended to purchase unit 2A at some point in the future to build a beer garden or patio.

The trial court issued a written ruling on August 28, 2013. The court found that Eyman and Burnett had credibly testified about their intention to sell and buy, respectively, the south unit of Building 2. The court also found that the surveyors had accidentally switched the numbering of Building 2 on the 2007 plat, a fact

neither Burnett nor Eyman were aware of—nor should have been aware of—at the time of the sale. The court also explicitly found that the testimony of Attorney Keele was not credible. The court stated:

> The Fobian Parties either knew that C.J. Land began constructing the restaurant on a parcel owned by Fobian Parties and said nothing, or later discovered the mistake and seek what would amount to a free restaurant. It is undisputed that Mr. Fobian saw the restaurant construction and made no objection during the construction. At best, Mr. Fobian's conduct could be characterized as inequitable and unfair, and his failure to act at the time the restaurant was being constructed estops him and his business entities from complaining about any resulting encroachment.

Thus, the court quieted the title to the restaurant site with C.J. Land as "absolute title holder, subject only to the FAB Mortgage and restrictions of record" and reformed the necessary legal documents. Additionally, the court ordered the plaintiffs to file, within thirty days, "a written request specifying the amount of costs and attorney fees they seek in conjunction with the claims they have successfully stated in this matter." The court entered judgment in favor of Fobian and against C.J. Land for the value of the north encroachment, and set the value at $2101.45.

On September 26, 2013, the plaintiffs filed an application for attorney fees and expenses. The district court filed a written ruling on February 11, 2014. The court found that Iowa Code section 649.5 limited the possible award of attorney fees to the amount of forty dollars. However, the court found that Iowa Rule of Civil Procedure 1.413 provided another basis of recovery, stating "that the actions taken by the Fobian Parties in defending against Plaintiffs' claims and in filing their own claims were frivolous and used for an improper purpose." The court concluded that all of the fees sought by the plaintiffs were reasonable and

awarded "attorney fees in the amount of $135,696.50, plus expenses in the amount of $7,094.53, and expert expenses in the amount of $2,636.44."[6]

Fobian appeals.

## II. Standard of Review.

We review the district court's ruling in a quiet title action de novo. *Stecklein v. City of Cascade,* 639 N.W.2d 335, 336 (Iowa 2005). We give weight to the district court's findings, but we are not bound by them. *Id.*

We review a district court's order imposing sanctions under our rules of civil procedure for an abuse of discretion. *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009). An abuse of discretion occurs "when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Schettler v. Iowa Dist. Ct.*, 509 N.W.2d 459, 464 (Iowa 1993). An erroneous application of the law is clearly untenable. *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997). When we review for an abuse of discretion, we will correct an erroneous application of the law. *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991).

## III. Discussion.

Fobian Farms maintains the district court's ruling to quiet title to the restaurant site in favor of the plaintiffs and reforming the corresponding legal documents was not equitable. Fobian Farms also maintains the district court abused its discretion in assessing sanctions against it.

---

[6] The court then deducted the amount C.J. Land owed Fobian for payment of taxes for the restaurant site, which totaled $36,643.00.

**A. Reformation.**

Fobian maintains the district court's decision to quiet title and reform the corresponding legal documents was inequitable because the plaintiffs failed to show that the instruments do not reflect the true intention of the parties and Fobian had no duty to alert C.J. Land they were building on property it did not own.

The court, sitting in equity, has the power to grant reformation of an instrument. *Walnut St. Baptist Church v. Oliphant*, 135 N.W.2d 97, 101 (Iowa 1965). "Equity is not bound by forms, fiction, or technical rules, but will seek and determine the true situation." *Hosteng Concrete & Gravel, Inc. v. Tullar*, 524 N.W.2d 445, 448 (Iowa Ct. App. 1994). "The burden of proof is upon the party requesting the reformation and the evidence must be clear and convincing." *Walnut*, 135 N.W.2d at 101. The requesting party "has the burden of proving by clear, satisfactory, and convincing evidence that the contract does not reflect the true intent of the parties, either because of fraud or duress, mutual mistake of fact, mistake of law, or mistake of one part and fraud or inequitable conduct on the part of the other." *Wellman Sav. Bank v. Adams*, 454 N.W.2d 852, 855 (Iowa 1999). "The person seeking reformation must also establish that the true intention of the parties which would be reflected in a reformed document constituted an undertaking that the parties had the power and capacity to perform." *Kendall v. Lowther*, 356 N.W.2d 181, 187 (Iowa 1984). "In reforming the instrument, the court does not change the agreement between the parties, but changes the drafted instrument to conform to the real agreement." *Wellman*, 454 N.W.2d at 855. Reformation may be ordered against a party to a deed, "a

person in privity with a party, or a person with notice of the relevant facts." *Orr v. Mortvedt*, 735 N.W.2d 610, 613 (Iowa 2007).

**1. Issues not preserved.** On appeal Fobian Farms has raised several arguments to reject reformation that were not properly preserved. Specifically, Fobian Farms contends the district court's decision is contrary to the Iowa Title Standards and Iowa law regarding the conveyance of condominiums, the after-acquired property clauses of the mortgages impose a lien on the southerly lot in Building 2, and C.J. Land and First American Bank are responsible for their own negligence in failing to review public records. Because Fobian failed to make these arguments before the district court and did not include them in their rule 1.904 motion to amend or enlarge, we will not consider them on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide on them on appeal.").

**2. Mutual mistake.** Although we are not bound by them, we are persuaded by the district court's express credibility findings regarding both Eyman's testimony he intended to sell and Burnett's testimony he intended to buy the southerly unit as a restaurant site. In fact, Eyman stated that part of the reason the 1999 plat was amended in 2007 was to reorient Building 2 so C.J. Land could have the south unit with visibility from the highway. Additionally, the district court expressly found neither Eyman nor Burnett was aware of the scrivener's error on the 2007 plat at the time Eyman sought and received releases from Fobian and the bank holding the senior mortgage. Thus there was a mutual mistake of fact in the expression of the contract not disputed by the

parties to the deed. *See Nichols v. City of Evansdale*, 687 N.W.2d 562, 570–71 (Iowa 2004) (holding reformation is proper when the mistake—mutual or unilateral—was made drawing the instrument). We also note that the mistake was not limited to the unit but also to the reference to the 1999 plat in all conveyances.

In respect to the claim of negligence, one authority has noted:

It has been said that mere negligence in executing or accepting a written contract is not a bar to reformation where the ground for relief is mutual mistake. Mistakes nearly always presuppose negligence, and so it is evident that the rule which permits reformation on the ground of mutual mistake does not contemplate that mere negligence will bar an action for reformation. More precisely, it is held that a failure to exercise care and caution when executing or accepting a written instrument is not a defense to reformation where the neglect or omission has not harmed the person against whom relief is sought, but where the neglect has resulted in harm to the other party, reformation will be denied.

M.L. Cross, *Negligence in Executing Contract as Affecting Right to Have it Reformed*, 81 A.L.R.2d 7 (1962).

**3. Intention of parties.** Fobian Farms maintains the plaintiffs were not entitled to reformation because they failed to prove the instruments do not reflect the true intent of the parties.[7] Here, some of the difficulty lies with the fact that

---

[7] In passing, Fobian wrongly maintains that the plaintiffs' exclusive remedy was to file a claim pursuant to Iowa Code chapter 560, which deals with the rights of occupying claimants. As stated in section 560.1, chapter 560 only applies when "an occupant . . . has in good faith made valuable improvements thereon, and is thereafter adjudged not to be the owner." Here, the only party that made improvements to any land was C.J. Land, and it had an honest belief in its ownership of the southerly unit. *In re Estate of Waterman*, 847 N.W.2d 560, 571–72 (Iowa 2014) (holding that under chapter 560, an occupant need only have a subjective belief it owned the property upon which improvements are made.)

the district court reformed seven documents which were completed at different times and between various parties.[8]

Fobian Farms argues that without testimony from a representative from the banks, there is no way to know what they intended at the time they released Eyman and Gateway Ltd. from the mortgage on unit 2B and whether they were laboring under the same mistake. However, Fobian Farms can only recover, or in this case, defend, on the strength of its own title, not on the weakness of the plaintiffs. *See Jacobs v. Miller*, 111 N.W.2d 673, 674 (Iowa 1961). Thus, Fobian Farms cannot rely upon defenses of other parties to support its claim.

Moreover, our supreme court has stated that reformation may be granted against a party with notice of the relevant facts as long as the party is not an innocent third person. *Orr*, 735 N.W.2d at 613.[9] We also observe one authority has recited the general rule:

> If a mistake of description occurs in a series of conveyances under circumstances that would entitle any one of the vendees to a reformation as against the immediate vendor, equity will work back through all and give the last vendee a right of reformation against the original vendor. Where the same mutual mistake has been repeated in each one of a chain of conveyances, under such circumstances as to entitle any one of the vendees to a reformation as against his immediate vendor, the equity will work back through all and entitle the last vendee to a reformation against the original grantor.

---

[8] The district court reformed (1) the partial release of real estate mortgage by Fobian to Gateway Ltd. and Eyman, (2) the partial release of real estate mortgage from the bank to Gateway Ltd. and Eyman, (3) the warranty deed from Gateway Ltd. to C.J. Land, (4) mortgage executed by C.J. Land to its bank, (5) the assignment of mortgages from the bank to Fobian, (6) the sheriff's deed for unit 2A to Fobian, and (7) the warranty deed from Fobian to Hoover Highway Business Park.
[9] We also note Gateway, a party to the deed and this action, was also in privity with both C.J. Land and Fobian Farms.

M.C.D., *Right of Present Claimant of Title as against Original or Intermediate Grantor to Reformation to Correct Error in Description Common to Conveyances in Chain of Title*, 89 A.L.R. 1444 (1934) (internal citation and quotation marks omitted); *see, e.g., Stewart v. Brand*, 23 Iowa 477 (1867) (holding that the mortgagee of a devisee of land that had been deeded to the testatrix by her husband could have a mistake in the description of the deed reformed).

**4. Bona fide purchaser—innocent third party.**  Fobian Farms is not entitled to protection as a bona fide purchaser or innocent third person under these facts.  Fobian Farms concedes in its brief that uncontradicted testimony of Carl Fobian and his attorney establishes that they knew the restaurant was on unit 2A before the sheriff's sale.  Because Fobian also knew that he signed a release for unit 2B and knew of C.J. Land's intent to build a restaurant on the site it purchased, Fobian Farms was aware of the mutual mistake between C.J. Land, Eyman, and Gateway.  In fact, Fobian Farms maintains it was its intent to take advantage of the mistake to its financial gain.  Thus, Fobian Farms has actual notice of C.J. Land's outstanding claim to the property and improvements prior to the sheriff's sale.  *See Waterman*, 847 N.W.2d at 571–72 ("In quiet title scenarios, the good faith standard requires a purchaser to show the purchase was made without either actual or constructive notice of existing rights in the property." (Internal quotation marks omitted)).  The same principle applies to conveyance by a sheriff's deed.  *Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 911 (Iowa 1977).

**5. Remedy.**  To deny the plaintiffs reformation of Fobian Farms' sheriff's deed as well as the subsequent deed to Fobian's other corporate entity, Hoover

Highway Business Park, would result in a windfall to Fobian and his two corporate entities. Fobian Farms held a second mortgage to the entire Building 2 and agreed to a mortgage release of one of the units for the sole purpose that the unit could be sold and a restaurant built upon it. Fobian insisted on a partial payment towards the mortgage before executing the release in June 2008, more than two years before receiving the sheriff's deed. The evidence reflects that before the restaurant was built, both units had approximately the same value and now the southerly lot has a restaurant built upon it and is valued at approximately $1.1 million. We affirm the relief granted to reform all instruments identified by the district court.

**B. Encroachment.**

Although Fobian Farms' pleadings fail to raise the issue regarding the encroachments, we deem this issue litigated by consent.

Fobian Farms maintains it had no duty to alert C.J. Land it was building on land it did not own and it cannot be held negatively accountable for failing to do so. Here, the district court cited case law for the proposition that a party may be estopped from complaining about a resulting encroachment if they knew of the encroachment at the time the neighbor built valuable improvements and failed to object. *See Ivener v. Cowan*, 175 N.W.2d 121, 124 (Iowa 1970). However, the district court did not find Fobian Farms was estopped from asserting its claim. The court did not hold Fobian Farms negatively accountable for failing to warn C.J. Land it was building on property it did not own.

However, at the time the restaurant was substantially completed in July 2009, it encroached upon the northerly unit, and the current owner was Gateway.

Further, as we have stated previously, "the purchaser at a sheriff's sale acquires title subject to any defects for which he may be on notice." *JP Morgan Chase Bank Nat'l Ass'n v. Hawkins*, No. 10-1015, 2011 WL 662671, at *2 (Iowa Ct. App. Feb. 23, 2011) (citing *Hamsmith v. Espy*, 19 Iowa 444, 446 (1865) ("The law proclaims in the ears of all who propose to buy—*caveat emptor*, and look out, take notice, beware of the title for which you bid.")). The sheriff only sells the interest or estate of the judgment debtor. *Hamsmith*, 19 Iowa at 446.

Although Fobian Farms should have been put on notice of the encroachment before the sheriff's sale, there is no evidence Fobian Farms had actual notice of the encroachment, and based upon his intention to take advantage of the mistaken description, Fobian thought it was buying the unit with the restaurant. Further, the plaintiffs have challenged the award of damages for the encroachment on appeal.

As our supreme court has noted, "[F]ail[ing] to remove from the land a thing which [a person] is under a duty to remove" constitutes a trespass. *Nichols*, 687 N.W.2d at 572 (citing Restatement (Second) of Torts § 158(c) (1982)). The supreme court also noted that where injunctive relief is not warranted, damages may be awarded in an "amount of the diminution in value of the property value caused by the encroachment or the cost to remove the encroachment." *Nichols*, 687 N.W.2d at 573.

Here the cost of removing the encroachment far exceeds the diminution of value to the property. Joe Burnett, president of C.J. Land, testified it would be cheaper to bulldoze the building and start over than to attempt to remove the encroachment.

The damages assessed were reasonable and only challenged by Fobian Farms on appeal. However, we modify the district court's ruling to grant an easement for the 1.3 foot strip for so long as the current restaurant building exists rather than what appears to be a forced sale of the strip.

**C. Sanctions.**

On appeal,[10] Fobian Farms maintains the district court abused its discretion in assessing approximately $145,000 sanctions against Fobian Farms, Hoover Highway Business Park, Inc., and Gateway, Ltd. for violation of Iowa Rule of Civil Procedure 1.413(1). Fobian Farms maintains the court abused its discretion because (1) the claims and defenses of Fobian were not frivolous, (2) the court considered inappropriate factors in assessing the sanction, and (3) the court failed to make the necessary findings to justify the sanctions. In the alternative, Fobian Farms maintains that even if Iowa Rule of Civil Procedure 1.413 was applicable, the amount of sanctions is not appropriate and the sanctions should have only been assessed against Fobian Farms' trial counsel.

Iowa Rule of Civil Procedure 1.413 provides, in pertinent part:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith

---

[10] The proper method of review of the imposition of sanctions is by writ of certiorari. *Mathias v. Glandon*, 448 N.W.2d 443, 445 (Iowa 1989). "[A]lthough this action is styled as an appeal, we treat it as a petition for a writ of certiorari to the extent it challenges the aware of sanctions in this matter." *Everly*, 774 N.W.2d at 492; *see also* Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal . . . and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested.").

argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation. If a motion, pleading, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee. The signature of a party shall impose a similar obligation on such party.

In an in-depth discussion of the rule, our supreme court stated:

The rule creates three duties known as the "reading, inquiry, and purpose elements." Each duty is independent of the others, and a breach of one duty is a violation of the rule. If a document is signed in violation of rule 1.413, the court is required to impose an appropriate sanction.

Compliance with the rule is determined as of the time the paper is filed. Counsel's conduct is measured by an objective, not subjective, standard of reasonableness under the circumstances. "The test is 'reasonableness under the circumstances,' and the standard to be used is that of a reasonably competent attorney admitted to practice before the district court." The reasonableness of the signer's inquiry into the facts and law depends on a number of factors, including, but not limited to: (a) the amount of time available to the signer to investigate the facts and research and analyze the relevant legal issues; (b) the complexity of the factual and legal issues in question; (c) the extent to which pre-signing investigation was feasible; (d) the extent to which pertinent facts were in the possession of the opponent or third parties or otherwise not readily available to the signer; (e) the clarity or ambiguity of existing law; (f) the plausibility of the legal positions asserted; (g) the knowledge of the signer; (h) whether the signer is an attorney or pro se litigant; (i) the extent to which counsel relied upon his or her client for the facts underlying the pleading, motion, or other paper; (j) the extent to which counsel had to rely upon his or her client for facts underlying the pleading, motion, or other paper; and (k) the resources available to devote to the inquiries.

One of the primary goals of the rule is to maintain a high degree of professionalism in the practice of law. The rule is intended to discourage parties and counsel from filing frivolous suits and otherwise deter misuse of pleadings, motions, or other

papers. Sanctions are meant to avoid the general cost to the judicial system in terms of wasted time and money. "The 'improper purpose' clause seeks to eliminate tactics that divert attention from the relevant issues, waste time, and serve to trivialize the adjudicatory process." However, a party or his attorney need not act in subjective bad faith or with malice to trigger a violation. A party or his attorney cannot use ignorance of the law or legal procedure as an excuse. The rule "'was designed to prevent abuse caused not only by bad faith but by negligence and, to some extent, professional incompetence.'"

*Barnhill v. Iowa Dist. Court for Polk Cnty.*, 765 N.W.2d 267, 273 (Iowa 2009) (internal citation omitted).

Fobian Farms maintains their claims were not frivolous because "Fobian Farms held valid, non-frivolous claims to the property on which C.J. Land wrongfully build its restaurants" and "had the right to defend itself against C.J. Land's quiet title action." Fobian Farms also asserts that because C.J. Land undisputedly built outside the unit, even if the dispute over the orientation of units A and B did not exist, there would still have been the issue of encroachment to be decided. Fobian Farms points out that the district court entered judgment for $2101.45 in its favor on the encroachment issue.

In its ruling on attorney fees, the district court stated:

It is clear to the Court, especially considering the testimony of Mr. Fobian and Attorney Keele, that the actions of the Fobian Parties in defending against Plaintiff's claims and asserting [sic] Fobian Parties' [sic] claims were of the type that Rule 1.413 was intended to address. Based on the Court's assessment of the testimony offered at trial, there is a high likelihood that the Fobian Defendants saw the mistake in the property descriptions as an opportunity to get a free restaurant. Rather than work with the Plaintiffs to rectify the mistake before this litigation was filed, the Fobian Defendants instead chose to pursue improper claims that delayed this process and wasted the resources and times of the parties, and required the use of extensive resources by the Court to resolve the issues presented by this action.

Fobian Farms argues that because the claims were based on recognized causes of actions, they cannot be frivolous. However rule 1.413 requires that the claims are "well grounded in fact *and* is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; *and* that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation." (Emphasis added.)

Here, the district court found that Fobian Farms' claims were made for "improper purpose" and were not "well grounded in fact." In support of sanctions, we note after the mistake was discovered, Eyman asked the surveyors to correct the scrivener's error and they complied by filing an affidavit correcting the mistake, but Fobian bullied the surveyors with litigation until they recanted their affidavit. Additionally, Fobian asked Eyman to help him with his improper plan of claiming ownership of the restaurant and offered to reduce Eyman's outstanding debt if he did so. Fobian then tried to "make someone pay" by the initiation of his claims after this action was initiated.

Fobian Farms next maintains the district court considered an improper factor when assessing the award because the court referred to its failure to work with the plaintiffs to rectify the mistake. Fobian Farms cites *Kendall v. Lowther*, 356 N.W.2d 181, 191 (Iowa 1984), for the proposition that failure to settle is not proper grounds for assessing fees. In *Kendall*, the court stated, "While we encourage parties to negotiate fair settlements, we will not penalize those who prefer a final judicial determination of their rights." 356 N.W.2d at 191. However, the court was considering the defendant's claim that the district court erred in

assessing the plaintiffs' attorney fees against them because the plaintiffs "had taken an unreasonable bargaining position during pre-settlement discussions." *Id.* The court explicitly found that there was no question the plaintiffs brought their claim in good faith. *Id.* Here, the district court was not penalizing Fobian Farms for refusing to settle, but rather for asserting counterclaims and third-party claims which were not brought in good faith.

Fobian Farms also contends the district court failed to make the necessary findings in order to assess sanctions. The district court is required "to determine the appropriate amount of a sanction after making specific findings as to (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the violation." *Rowedder v. Anderson*, 814 N.W.2d 585, 590 (Iowa 2012) (internal quotation marks omitted). Here, the district court found that all of the plaintiffs' attorney fees were reasonable and ordered Fobian Farms to pay them in their entirety. However, the court did not consider the minimum to deter nor the parties' ability to pay. In fact, the record does not contain evidence of any of the three parties' ability to pay the $145,000 award.

While we do not find the district court abused its discretion in assessing sanctions, the district court did not make the specific findings necessary to determine whether the amount of the sanctions are appropriate. One of the difficulties here is that not all of Fobian's claims were against the plaintiffs, and the plaintiffs are not entitled to recover their attorney fees for any improper claims brought against other parties except to the extent additional time was expended by counsel during pretrial proceedings where the plaintiffs were required to also

participate. Moreover, some time would have been expended on this suit notwithstanding the actions of Fobian, and there is no explanation of how much approximated time was expended by the plaintiffs' counsel to address any unwarranted claim or pretrial proceedings, or any needless extension of the time in trial. We also note the encroachment issue was meritoriously decided in favor of Fobian. There is also no delineation between the three sanctioned parties or explanation how or why each should be separately sanctioned. Thus, we remand to the district court to make the required specific findings and reconsider the amount of sanctions awarded. *See Everly*, 774 N.W.2d at 495–96 (remanding to the district court to make specific findings and award sanctions consistent with those findings).

## IV. Conclusion.

Because we find there was a mutual mistake made in the expression of the deed and reformation is an appropriate remedy, we affirm the district court's ruling to reform the corresponding legal documents. We modify the district court's ruling to grant an easement for the 1.3 foot strip for so long as the current restaurant building exists rather than what appears to be a forced sale of the strip. We find the district court did not abuse its discretion in assessing sanctions. However, because the court failed to make the necessary findings to determine if the amount of the award is appropriate, we remand to the district court to make the required specific findings and reconsider the amount of sanctions awarded.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**